THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CARMEN BARBER, Appellant.

Argued October 19, 1942; decided January 7, 1943.

*Hayden C. Covington* and *Arthur Rathjen* for appellant. The evidence shows that defendant's activity does not constitute "hawking" or "peddling" within the true meaning of the ordinance and that there was no sale or selling or bartering as those terms-are properly defined because there was no commercial motive or profit contemplated by defendant. (*Schneider* v. *State*, 308 U. S. 147; *Hague* v. *C. I. O.*, 307 U. S. 496; *Reynolds* v. *United States*, 98 U. S. 145; *Matter of Cain*, 39 Ala. 440; *People* v. *Finkelstein*, 170 Misc. 188; *Cincinnati* v. *Mosier*, 61 Ohio App. 81; *Semansky* v. *Stark*, 196 La. 307; *State* v. *Meredith*, 197 S. C. 351; *Thomas* v. *Atlanta*, 59 Ga. App. 520; *State* v. *Morris*, 28 Idaho, 599.) The ordinance as construed by the courts below to apply to the activity of defendant in preaching the gospel and distributing literature is unconstitutional and void because as so construed and applied defendant's rights of freedom of press and worship of Almighty God are abridged and denied contrary to sections 3, 8 and 11 of article I of the New York State Constitution without equal protection and due process of law. (*Erie R. R. Co.* v. *Tompkins*, 304 U. S. 64; *People ex rel. Doyle* v. *Atwell*, 232 N. Y. 96; *Concordia Fire Ins. Co.* v. *Illinois*, 292 U. S. 535; *Lovell* v. *Griffin*, 303 U. S. 444; *Matter of Jackson*, 96 U. S. 727; *Grosjean* v. *American Press Co.*, 297 U. S. 233; *Blue Island* v. *Kozul*, 379 Ill. 511; *Village of South Holland* v. *Stein*, 373 Ill. 472; *Commonwealth of Pennsylvania* v. *Reid*, 20 A. [2d] 841; *Hough* v. *Woodruff*, 2 So. [2d] 577; *State* v. *Greaves*, 112 Vt. 222; *Watson* v. *Jones*, 80 U. S. 679.) The ordinance as construed by the courts below to apply to the activity of defendant in preaching the gospel and distributing literature is unconstitutional and void because as so construed and applied it abridges and denies defendant his rights of freedom of press and of worship of Almighty God and is an excessive burden thereon, contrary to the First and Fourteenth Amendments to the United States

Constitution. (*Schneider* v. *State*, 308 U. S. 147; *Cantwell* v. *Connecticut*, 310 U. S. 296; *Di Santo* v. *Pennsylvania*, 273 U. S. 34; *Grosjean* v. *American Press Co.*, 297 U. S. 233; *Lovell* v. *Griffin*, 303 U. S. 444.)

*Whitney North Seymour et al.*, as Committee on Civil Rights of the New York State Bar Association et al., *amici curiæ*. The ordinance is inapplicable to appellant's activities. (*Cantwell* v. *Connecticut*, 310 U. S. 296; *State ex rel. Semansky* v. *Stark*, 196 La. 307; *City of Shreveport* v. *Teague*, 8 So. [2d] 640; *Thomas* v. *City of Atlanta*, 59 Ga. App. 520; *State* v. *Meredith*, 197 S. C. 351; *State ex rel. Hough* v. *Woodruff*, 147 Fla. 299; *Cincinnati* v. *Mosier*, 61 Ohio App. 81; *City of Blue Island* v. *Kozul*, 379 Ill. 511; *McConkey* v. *City of Fredericksburg*, 179 Va. 556; *Duncan* v. *Gairns*, 27 Can. Crim. Cas. 440; *Gregg* v. *Smith*, 8 L. R. 302; 12 Eng. Rul. Cas. 501; *People* v. *Finkelstein*, 170 Misc. 188.) The ordinance is invalid if it was correctly applied to appellant. (*Cantwell* v. *Connecticut*, 310 U. S. 296; *Schneider* v. *State*, 308 U. S. 147; *Bridges* v. *California*, 314 U. S. 252; *People* v. *Sandstrom*, 279 N. Y. 523; *Lovell* v. *Griffin*, 303 U. S. 444; *Hague* v. *C. I. O.*, 307 U. S. 496.)

*Daniel J. O'Mara*, District Attorney (*Alan M. Hill* of counsel), for respondent. The ordinance is a valid exercise of the legislative power of the town and in no unconstitutional way abridges or restricts appellant's right of free speech, press, conscience or religion. (*Jones* v. *Opelika*, 316 U. S. 584; *People* v. *Passafume*, 22 N. Y. S. [2d] 785.)

LEHMAN, Ch. J. The defendant, a member of a religious sect known as " Jehovah's Witnesses," rang the door bell of the house where a police officer of the town of Irondequoit lived, and when the officer came to the door, the defendant took several books out of a satchel and " held them out " towards the police officer. We quote here the officer's testimony of what then occurred:

" A. Yes, and I said to him what do you want and he said a little donation, and I said I will give you 25 cents for the Bible and he said no, I will sell it to you for 35 cents and I informed him then he was violating the town ordinance and for him to quit soliciting and peddling and to get out of town and he started to walk toward the house next to me on the right and I opened the

door and I said if you go to that next house and solicit there I will arrest you and he went up and rang the door bell and a man came to the door and he held out one of these cards, and at that I went up and took hold of him and placed him under arrest."

The information verified by the police officer charges:

" That on the 7th day of December, 1941, at about 10:45 o'clock A. M. one Carmen Barber did violate Sec. 136, Par. 1, Town Licensing Ordinance, (by) wilfully and unlawfully did commit an act of selling without a license in that he did offer for sale and set a price of 35 cents on a Bible which was among other books and pamphlets he displayed to the complainant at his home, 205 Pt. Pleasant Rd., in the Town of Irondequoit, New York."

The defendant was convicted after trial before a justice of the peace sitting as a court of Special Sessions, and his conviction was affirmed by the County Court. Upon the appeal to this court the defendant maintains that in offering the Bible and other books and pamphlets for a price he did not violate the ordinance; and that if the ordinance were construed so broadly that his conduct comes within its scope, the ordinance would violate his rights of freedom of religious worship and freedom of speech and press guaranteed by the Constitution of the State of New York and the Constitution of the United States.

The ordinance in part provides

" Section 1.  *Title.*

" This ordinance shall be known as the ' Licensed Occupations Ordinance.'

" Section 2.  *Licensing Trades or Occupations.*

" Pursuit or exercise within the Town of Irondequoit of the following trades or occupations is hereby prohibited without a license obtained as hereinafter provided, to wit:

" (a) Soliciting, either on private property or on the public highway, running therefor, or for hotels, boats, lodging houses or garages; auctioneering, hawking and peddling, except the peddling of meats, fish, fruit and farm products by farmers and persons who produce such commodities;"

Subdivision b of section 2 refers to operation of public vehicles over streets of the town for hire. Subdivision c refers to operation of places of public amusement. Subdivision d refers to the pursuit of the trade of plumbing.

Section 4 provides:

" Section 4. *Issuing of Licenses.*

" The town clerk of the Town of Irondequoit upon written application and upon receipt of the license fee therefor shall issue a license specifying the trade or occupation thereby authorized, and such license shall become effective from the date thereof and shall continue in force for the term specified therein, but in no event longer than through the thirty-first day of December next succeeding. Such license shall not be transferable. Such license may be refused by the town clerk if the applicant shall have been convicted of a misdemeanor or felony which in the judgment of the town clerk renders the applicant unfit or undesirable to carry on the trade or occupation involved. The town clerk may also refuse a license to any person who in his judgment shall be an undesirable person or incapable of properly conducting the trade or business desired. Any applicant who has been refused a license by the town clerk may apply to the town board therefor, and the same may be granted or refused by the board, except as prohibited herein. Where additional requirements are imposed herein on the issuance of certain licenses the town clerk shall issue a license only upon compliance with such additional requirements."

The defendant earns his living by working as a laborer for a contractor. In his spare hours and on Saturdays and Sundays he distributes Bibles and religious books and tracts. The satchel which he carried at the time of his arrest contained only such publications. The defendant is foreign born. His testimony is not entirely clear. It appears sufficiently, however, that the books and pamphlets which the defendant distributes are furnished to him by Watch Tower Bible and Tract Society, a society or corporation organized to spread the doctrines which are accepted as the word of God by the religious sect of which the defendant is a member. He carried a certificate from the society that he " is an ordained minister of Jehovah God to preach the gospel of God's kingdom under Christ Jesus, and is therefore one of Jehovah's witnesses; that he is sent forth by this Society, which is created and organized and chartered by law to preach the gospel of God's kingdom, and that Jehovah's witnesses are commanded to obey God by preaching the gospel." The defendant testified that the distribution

of the Bible and religious books is the form in which Jehovah's Witnesses preach the gospel. The price demanded "pays for the ink and paper" but "if the person has no money, if he ask me and say I have no money, I give him a Bible or book or anything he want."

The slight conflict between the testimony of the defendant and the testimony of the complaining witness, in respect to the conversation or transaction, which, it is said, constitutes a violation of the ordinance, has been resolved against the defendant in the courts below. The testimony of the defendant in respect to his activities as a member of a religious sect or society and his purpose in distributing or selling the Bible and the religious tracts is not contradicted and its truth is not challenged. The primary problem presented upon this appeal is whether the testimony of the complaining witness which we have quoted, read in the light of the testimony of the defendant which we have summarized, shows that the defendant was engaged in the "pursuit or exercise" of the "trades or occupations" of "soliciting" or of "hawking or peddling" within the meaning of the ordinance.

In the case of *Jones* v. *Opelika* (316 U. S. 584), decided June 8, 1942, the Supreme Court of the United States sustained the *power* of a state to impose by statute or ordinance a tax upon the sale of all merchandise, without discrimination between religious books and tracts and other articles or merchandise, and sustained the *power* of the state to require a license for the exercise of the "business" or "vocation" or "calling" of "peddlers" or of "vendors" of such articles, though such "peddlers" or "vendors" sell or distribute books and pamphlets without profit to themselves and for the purpose of disseminating doctrines or opinions and exact a price only to raise moneys to meet the cost of spreading their ideas. Four justices of the court dissented from that decision on the ground that taxing and licensing statutes or ordinances "could, when applied to the dissemination of ideas, be made the ready instrument for destruction of that right" [of free speech] and that the ordinances there challenged "impose a burden on the circulation and discussion of opinion and information in matters of religion, and therefore violate the petitioner's rights to freedom of speech, freedom of the press, and freedom of worship" in contravention

of the guarantees of those freedoms contained in the Constitution of the United States. (pp. 607, 612.) In that case no question was presented whether the challenged ordinances were *intended* to be " applied to the dissemination of ideas " by the sale of religious books by Jehovah's Witnesses. That had been authoritatively decided by the state courts, and the construction placed upon the ordinances by the state courts could not be challenged in the Supreme Court of the United States. Only the question of the scope and effect of the provisions of the Constitution of the United States was presented and decided by the Supreme Court. If only the same question were presented upon this appeal the decision of the Supreme Court might require us to affirm the judgment against the appellant, regardless of what the views on such question of some or all the judges of this court might be.

Upon this appeal we must decide the question whether the ordinance, properly construed, requires a member of a religious sect to obtain a license in order to be permitted to sell or offer to sell the Bible and religious tracts without profit to himself, before we reach any question whether the ordinance so construed would infringe the rights of freedom of worship, and of freedom of speech and press, guaranteed not only by the Constitution of the United States but in perhaps even plainer language by the Constitution of the State of New York. Parenthetically we may point out that in determining the scope and effect of the guarantees of fundamental rights of the individual in the Constitution of the State of New York, this court is bound to exercise its independent judgment and is not bound by a decision of the Supreme Court of the United States limiting the scope of similar guarantees in the Constitution of the United States.

The ordinance is in express terms limited in its application to specified " trades or occupations " including the trades or occupations of " soliciting " and " hawking and peddling." The words " trades or occupations " suggest activities carried on as a business, and a reading of the ordinance as a whole leaves no room for doubt that the ordinance was intended to regulate certain business activities within the town. The words of the ordinance do not dictate, and perhaps do not permit, a construction which would bring within the scope of the ordinance solicitation, by an unpaid

solicitor, of contributions for the work of a religious society of which the solicitor is a member, or the sale of the Bible or religious tracts to cover the cost of production, or to raise funds for the purposes of the society. The ordinance can be given its full intended effect without such construction.

The Bill of Rights embodied in the Constitutions of the State and Nation is not an arbitrary restriction upon the powers of government. It is a guarantee of those rights which are essential to the preservation of the freedom of the individual — rights which are part of our democratic traditions and which no government may invade. Where a legislative body has sought to invade a field from which under the Bill of Rights the government is excluded, and has violated rights guaranteed by the Constitution, the courts must refuse to recognize or sanction the legislative decree — but legislative bodies are no less responsible than the courts for the preservation of the liberties of the individual, guaranteed by the Bill of Rights, and legislative bodies, as a general rule, accept no less sincerely the democratic traditions and principles which the Bill of Rights expresses. We may not impute to a legislative body an intent to adopt a statute or ordinance which might be used as an instrument for the destruction of a right guaranteed by the Constitution which executive and legislative officers of government, no less than judges, are sworn to maintain. For that reason an ordinance or statute should be construed when possible in manner which would remove doubt of its constitutionality, and possible danger that it might be used to restrain or burden freedom of worship or freedom of speech and press.

We apply these rules to the construction of the ordinance which it is said that the defendant violated. The ordinance not only prohibits the exercise by any person of the " trades " or " callings " of " soliciting " or " hawking " or " vending " without a license, but confers upon an officer of the town discretion whether to grant or withhold a license. Similar ordinances and statutes have usually been construed as intended to apply only to business activities, and the distribution or sale of religious books or pamphlets by a member of a religious sect for the propagation of the faith or doctrines of the sect and without profit to the distributor, and the sale or distribution of books and pamphlets of opinion in similar

manner, have been excluded from its scope. (See *State ex rel. Semansky* v. *Stark,* 196 La. 307; *State* v. *Meredith,* 197 S. C. 351; *Thomas* v. *City of Atlanta,* 59 Ga. App. 520; *City of Shreveport* v. *Teague,* 200 La. 679; *City of Cincinnati* v. *Mosier,* 61 Ohio App. 81; *People* v. *Finkelstein,* 170 Misc. 188.) Even in England, where legislative bodies, though restrained by the traditions and principles embodied in the Bill of Rights, exercise a power not subject to constitutional limitation, a similar legislative decree has received similar construction. (*Gregg* v. *Smith,* 12 Eng. Rul. Cases 501 [Q. B. 1873].)

Though we may assume for the purposes of this appeal that the ordinance would be valid even if, in plain language, the defendant's activities were included in its scope, yet both the prevailing and dissenting opinions filed in the case of *Jones* v. *Opelika* (*supra*), demonstrate that strong argument might then be urged against its validity and that so construed it might be applied in manner which would seriously burden or destroy fundamental rights. In such case it is clear to us that the ordinance should not be construed as intended to apply to the activities of the defendant.

Upon this appeal the Committee on Civil Rights of the New York State Bar Association, the Committee on the Bill of Rights of the Association of the Bar of the City of New York, and the Committee on Civil Rights of the New York County Lawyers Association, have filed a brief, *amici curiæ,* by permission of the court. We conclude this opinion by a quotation from that brief: " It may seem to some that appellant's activities were of such a character that, at this critical period in world history, the Courts and the Bar need not be particularly concerned with their repression. But, if appellant's activities involved the exercise by him of fundamental rights guaranteed by the Federal and State Constitutions, the violation of those rights cannot be disregarded as of trivial consequence. Each case of denial of rights to an individual or to a small minority may seem to be relatively unimportant, but we know now, more surely than ever before, that callousness to the rights of individuals and minorities leads to barbarism and the destruction of the essential values of civilized life." We can find no reason to doubt that the ordinance was not intended to furnish an instrument by which the right of any group to spread

its religious beliefs, or even social opinions, could be curbed. We are bound to construe the statute in manner which would exclude possibility that the ordinance might be given such effect.

The judgments should be reversed and the information dismissed.

LOUGHRAN, FINCH, RIPPEY, LEWIS and DESMOND, JJ., concur; CONWAY, J., taking no part.

Judgments reversed, etc.