**BONANZA AIR LINES, INC., a Nevada corporation, Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION OF NEVADA, and J. G. Allard, Noel A. Clark, and Richard G. Campbell, as Members of and constituting said Commission, C. N. Newell, as Secretary of such Commission, and Roger D. Foley, Attorney General of the State of Nevada, Defendants.**

**No. 1460.**

United States District Court
D. Nevada.
Aug. 31, 1960.

Merrill, Circuit Judge, dissented.

Vargas, Dillon & Bartlett, Reno, Nev., Ralston O. Hawkins, Las Vegas, Nev., for plaintiff.

Roger D. Foley, Atty. Gen., for defendant.

Before ORR and MERRILL, Circuit Judges, and SOLOMON, District Judge.

SOLOMON, District Judge.

Plaintiff Bonanza Air Lines, a Nevada corporation, brought this action against the Nevada Public Service Commission and the Nevada Attorney General, for a declaratory judgment and for an injunction restraining the defendants from enforcing certain provisions of the Nevada Public Service Commission Act against the plaintiff.

In 1946, Bonanza was awarded a permanent certificate of public convenience and necessity by the Nevada Commission to serve Reno and Las Vegas, Nevada, and, in 1947, the intermediate points of Hawthorne and Tonopah, Nevada.

Several years later, Bonanza expanded its business from a solely intrastate operation. It obtained a certificate from the Federal Civil Aeronautices Board (CAB) to serve the interstate route from Reno to Phoenix, Arizona, as well as intermediate points, including Hawthorne and Tonopah.

In December, 1958, pending the outcome of an investigation to determine the desirability of continued service to Hawthorne and Tonopah, the CAB gave Bonanza the option to either continue or

discontinue service to Hawthorne and Tonopah.

In August, 1959, Bonanza notified the Nevada Commission by letter that it intended to discontinue service to Hawthorne and to curtail service to Tonopah. In this letter, Bonanza stated that it would not comply with the provision of the Nevada Public Service Commission Act, N.R.S. 704.390, which requires a "public utility" seeking to restrict or to discontinue service to give the Commission 20 days notice and to apply for an order granting such permission. Bonanza did not deny that it qualified as a "public utility" within the meaning of the Act. However, it insisted that it was subject to the exclusive jurisdiction of the CAB, and was therefore not required to submit to the jurisdiction of the Nevada Commission.

Nevada's Attorney General, in a letter to the Commission, expressed the opinion that the Commission had jurisdiction over Bonanza, and that Bonanza's unilateral action violated N.R.S. 704.390. Based upon this opinion, the Commission on October 28, 1959, without notice or hearing, ordered Bonanza to reinstate full service to Hawthorne and Tonopah.

On November 5, Bonanza appeared informally before the Commission and obtained a deferment of the effective date of the Commission's order until December 4, for the purpose of permitting the Attorney General to reconsider his opinion in the light of newly submitted facts and authorities.

Prior to the expiration of such period, Bonanza brought this action in the Federal Court for a declaratory judgment and an injunction, claiming federal unconstitutionality of the Commission's order which was issued pursuant to the Nevada statute. In this action, Bonanza seeks to restrain the defendants from enforcing the order of the Commission and from otherwise attempting to regulate the continuance, discontinuance, frequency or scheduling of plaintiff's service to Hawthorne and Tonopah.

Bonanza applied for and obtained a temporary restraining order, pending the convening of a three-judge court pursuant to the provisions of 28 U.S.C.A. §§ 2281 and 2284.

Bonanza contends that:

(1) Congress, through the Federal Aviation Act, 49 U.S.C.A. § 1301 et seq., has preempted the field of air commerce, at least as to the abandonment and revocation of service to any point, and that the State of Nevada is therefore powerless to act in this area;

(2) the order of the Nevada Commission is in direct conflict with the rules and regulation of the CAB, promulgated under the authority of the Federal Aviation Act;

(3) the extraordinary costs which reinstatement would necessitate would so weaken the financial position of Bonanza as to jeopardize its entire interstate operations, and would constitute an undue burden upon interstate commerce;

(4) since Bonanza, as an interstate carrier, receives a subsidy from the CAB dependent upon its costs of operation, reinstatement of service to Tonopah might necessitate the payment of higher subsidies, thereby placing an additional burden upon interstate commerce;

(5) to reinstate service at Hawthorne without the facilities which have been dismantled, and without the radio licenses which have been surrendered, would violate Federal safety and communications regulations, and would be hazardous to passengers and crew;

(6) forced compliance with the Nevada Commission's order would deprive Bonanza of both procedural and substantive due process: procedural, in that it was not afforded notice or hearing on the Commission's action; substantive, in that the requirement of reinstatement is arbitrary and unreasonable.

Defendants deny many of Bonanza's allegations. They also raise numerous defenses directed to the existence of jurisdiction and to its discretionary as-

sumption, as well as to the merits of Bonanza's claim.

Defendants rely upon Public Utilities Commission of State of California v. United Air Lines, 1953, 346 U.S. 402, 74 S.Ct. 151, 98 L.Ed. 140, and Public Service Commission of Utah v. Wycoff Co., 1952, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291, in support of their jurisdictional contentions that (1) the action is premature, (2) Bonanza has failed to exhaust its administrative remedies, (3) federal-state relations require that the court abstain from proceeding to the merits of the case, and (4) the action is not within the federal-question jurisdiction of the federal courts.

In the United Air Lines case, plaintiff airline refused to comply with an order of the California Commission requiring that it file a tariff covering its service from Long Beach, California, to Catalina Island, California.

United brought an action in the federal district court for a declaratory judgment and an injunction restraining the commission from interfering with its operations.

United contended that the flight from Long Beach to Catalina Island was interstate commerce since the planes passed over United States water, and that California therefore lacked jurisdiction to regulate the flight.

A three-judge court held in favor of United on the merits. The Supreme Court reversed, in a brief opinion, "on authority of Public Service Commission of Utah v. Wycoff Co."

In the Wycoff case, plaintiff, a motion picture distributor, imported, processed, and transported motion picture film in Utah. It alleged that the Utah Public Service Commission "threatened to and are attempting to stop and prevent plaintiff from transporting motion picture film and newsreels between points and places within the State of Utah." [344 U.S. 237, 73 S.Ct. 238.]

Wycoff sought a declaratory judgment and an injunction restraining the Commission from interfering with its intra-

state operations. It contended that its intrastate operations formed an integral part of its interstate operations and that the state of Utah lacked jurisdiction to regulate any of its operations.

The district court dismissed the action and the court of appeals 10 Cir., 195 F. 2d 252, reversed. Both courts decided the case on its merits.

The Supreme Court, in an exhaustive opinion by Justice Jackson, reversed and directed that the action be dismissed on the following jurisdictional grounds:

(1) the action was premature;

(2) plaintiff had failed to exhaust its administrative remedies; and

(3) proper federal-state relations required the court to decline jurisdiction.

Justice Jackson also concluded that, on the record before the court, the action was not within the federal-question jurisdiction of the federal courts.

In so far as the Wycoff and United Air Lines decisions were grounded upon considerations of prematurity or exhaustion of remedies, they are difficult to reconcile with City of Chicago v. Atchison, T. & S. F. R. Co., 1958, 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174.

In the Chicago case, the city adopted an ordinance requiring any new motor carrier desiring to transfer interstate passengers between railroad terminals in Chicago to obtain a certificate of convenience and necessity from the city.

A new motor carrier organized by the railroads refused to apply for such a certificate and the City threatened to arrest and fine its drivers if they attempted to operate the transfer service.

The motor carrier and the railroads brought an action in federal court for a declaratory judgment and an injunction restraining the city from enforcing the ordinance. They contended that the ordinance placed an unconstitutional burden upon interstate commerce.

The district court, 136 F.Supp. 476, dismissed the action. The court of appeals 7 Cir., 240 F.2d 930, reversed, holding the statute unconstitutional on its

face. The Supreme Court affirmed, despite a vigorous dissent based both upon the prematurity of the action, and upon the failure of the motor carrier to exhaust its administrative remedies.

However, in so far as the Wycoff and United Air Lines cases were grounded upon considerations of federal-state relations, or the lack of federal-question jurisdiction, they are clearly distinguishable from the Chicago case.

■ Current concepts of federal-state relations require that a federal court refrain from deciding a constitutional issue "which hinges upon a determination of unsettled state law that may render resolution of the federal constitutional issue unnecessary, until the state issue is resolved in the state courts." 1 Moore's Federal Practice, ¶0.229[3].

In the Chicago case [357 U.S. 77, 78 S.Ct. 1067], the Supreme Court held that there was "no ambiguity in the section which calls for interpretation by the state courts." It was obvious that the City of Chicago intended to impose its licensing requirements upon the new motor carrier organized by the railroads and that the Illinois state courts would so interpret the ordinance.

However, in the Wycoff case and the United Air Lines case, there existed an unsettled question of state law. Should the Act be interpreted so as to apply to the plaintiff? A holding by a state court that the Act did not apply to plaintiff's operations would have avoided the federal-state conflict in each case. In other words, it would have obviated the necessity of deciding whether the state had exceeded its constitutional limits of regulation.

In the present case, there are a number of alternative constructions which a state court might place upon the Nevada Act, particularly in view of the policy that courts, whenever possible, will construe statutes so as to avoid conflict with the federal constitution. People v. Barber, 1943, 289 N.Y. 378, 46 N.E.2d 329; see also Harrison v. N. A. A. C. P., 1959, 360 U.S. 167, 177–178, 79 S.Ct. 1025, 3

L.Ed.2d 1152; Government and Civic Employees, etc. v. Windsor, 1957, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894.

The state court may construe the Act to confer upon the Nevada Commission the authority to regulate only intrastate carriers.

Or it may construe the Act to confer on the Commission the authority to regulate to the full limit of the state's constitutional power. In the latter case, the state court would then decide whether Congress has pre-empted the field—not for the purpose of determining the constitutionality of the state act, but solely as an element to be considered in determining the reach of the state law as a matter of construction.

Either construction might avoid a challenge to the constitutionality of the Nevada Act.

In Harrison v. N. A. A. C. P., supra, the Supreme Court held that a federal court must abstain from determining the constitutionality of a state statute if the statute leaves "reasonable room for a construction by the [state] courts which might avoid in whole or in part the necessity for federal constitutional adjudication." 360 U.S. at page 177, 79 S.Ct. at page 1030. See also Government and Civic Employees, etc. v. Windsor, supra; Public Service Commission of Utah v. Wycoff Co., supra.

■ This rule applies to the present case and requires us to abstain from considering the merits of Bonanza's claim.

Furthermore, this action must be dismissed because it is not within the federal-question jurisdiction of the federal courts.

In Public Service Commission of Utah v. Wycoff Co., supra [344 U.S. 237, 73 S.Ct. 242], Justice Jackson outlined the requirements of federal-question jurisdiction in a declaratory judgment action:

"In this case, as in many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory de-

fendant may assert in the Utah courts. Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending, or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law. Tennessee v. Union & Planters' Bank, 152 U.S. 454 [14 S. Ct. 654, 38 L.Ed. 511]; The Fair v. Kohler Die & Specialty Co., 228 U.S. 22 [33 S.Ct. 410, 57 L.Ed. 716]; Taylor v. Anderson, 234 U.S. 74 [34 S.Ct. 724, 58 L.Ed. 1218]." 344 U. S. at page 248, 73 S.Ct. at page 242.

See also Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194; Developments in the Law-Declaratory Judgments, 62 Harv.L.Rev. 787, 802 (1949).

Bonanza is seeking, in this action, freedom from prosecution in a state court. In the complaint it alleges:

"Unless restrained by the judgment or order of this court, Plaintiff has reason to feel and expect that [defendants] * * * will in-
stitute or cause to be instituted the proceedings authorized by the laws of Nevada for statutory penalties by reason of violation thereof, or will secure the enforcement of said order by mandamus or injunction as elsewhere provided by Nevada law."

Any of these threatened actions would necessarily be based solely upon the provisions of the Nevada Public Service Commission Act; in none of these actions would the Commission's complaint raise a federal question.

We therefore conclude that Bonanza's action for a declaratory judgment and for an injunction fails to raise a federal question within the jurisdiction of this court.

Dismissed.

MERRILL, Circuit Judge (dissenting).

I dissent. The majority view is that (1) this Court is without jurisdiction for lack of a substantial federal question, and (2) even were there jurisdiction the case is one in which federal abstention should apply.

In my view, a substantial federal question is presented and Public Service Commission of Utah v. Wycoff Co., 1952, 344 U.S. 237, 238, 73 S.Ct. 236, 97 L.Ed. 291, is distinguishable. That opinion, as I read it, simply holds that, since there had been no stated demand or threat, "this dispute has not matured to a point where we can see what, if any concrete controversy will develop." 344 U.S. at page 245, 73 S.Ct. at page 241.

Here there is no uncertainty as to the demand which the state may make, for the demand, through the Public Service Commission, has already been made: that Bonanza resume service at Hawthorne and Tonopah. We need not await action in the state courts to determine the nature or scope of the demand. Bonanza's claim in this action is not a mere anticipatory defense to a claim which the State may make in the future. It is a present claim to relief against a present demand. If there be doubt as to

Nevada's position, it is not as to the nature or scope of the demand. Rather, it is whether Nevada, in the face of a contest or through state review, would withdraw or moderate its demand. The issue upon the merits is as to the legality under federal law of the demand the State has now officially made. To me, that is a federal question. I cannot agree that the possibility of a change of heart or of point of view on the part of the State should render that question not yet ripe for federal decision. If the rule is to be that in all cases the question of legality of state action under federal law is to be tried in the state courts, that rule, to my mind, has not yet been clearly announced.

Further, I feel that the injury alleged constitutes irreparable injury sufficient to confer equitable jurisdiction. If Nevada's demand is to be met, Bonanza must incur substantial expense in restoring and maintaining its facilities at Hawthorne and Tonopah and in rendering the necessary service to these communities, no part of which expense is recoverable. Public injury, as alleged, through burden upon or interruption of interstate commerce should be sufficient to confer jurisdiction for declaratory relief.

This case would seem to me to be governed not by Wycoff, but by Public Utilities Commission of State of California v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470. At pages 538–539 of 355 U.S., at page 450 of 78 S.Ct., the Wycoff case is distinguished in this language:

"The Commission has plainly indicated an intent to enforce the Act; and prohibition of the statute is so broad as to deny the United States the right to ship at reduced rates, unless the Commission first gives its approval. The case is, therefore, quite different from Public Service Commission vs. Wycoff Co., 344 U.S. 237 [73 S.Ct. 236, 97 L.Ed. 291], where a carrier sought relief in a federal court against a state commission in order 'to guard against the possibility,' id., 344 U.S. at page 244 [73 S.Ct. at page 240] that the Commission would assume jurisdiction. Here the statute limits transportation at reduced rates unless the Commission first gives approval. The controversy is present and concrete—whether the United States has the right to obtain transportation service at such rates as it may negotiate or whether it can do so only with state approval."

I disagree also that this is a case for federal abstention. I feel that we may assume that the state courts would construe Nevada law as conferring upon the commission the authority to regulate to the full limit of the State's constitutional power. Still the scope of that power will depend upon the extent of impact of federal law: whether the federal government has preempted the field. Construction of the applicable state law does not in anywise depend upon an exercise of state judgment on any matter of state policy, as in Harrison v. N. A. A. C. P., 1959, 360 U.S. 167, 79 S.Ct. 1025, 3 L. Ed.2d 1152. Rather, it depends upon the extent of exercise of federal legislative or administrative judgment. I fail to see why the federal courts should abstain in an area of the law which is their own peculiar concern. We should simply be holding off in order to be able to ascertain whether or not the state court had come up with the right answer from the federal point of view. As stated in United States v. Livingston, D.C.E.D.S.C. 1959, 179 F.Supp. 9, 13, where the doctrine of abstention was held inapplicable:

"As we would defer to the state courts in cases involving questions of state law, we must perform our duty of decision in a case in which the only question is federal."

I would accept jurisdiction and proceed to a consideration of the merits of this dispute.