**ALLEGHENY AIRLINES, INC.**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, and its Chairman, George I. Bloom, and William F. O'Hara, James McGirr Kelly, Daniel Huyett, III, and Louis J. Sparvero, Members of the Commission, Defendants.**

**Civ. A. No. 69–2148.**

United States District Court, E. D. Pennsylvania.

Nov. 10, 1970.

As Amended Nov. 18, 1970.

Robert H. Young, Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Paul Silverstein, Gen. Counsel for PUC, Daniel F. Joella, Asst. Gen. Counsel, Harrisburg, Pa., for defendants.

O. D. Ozment, Acting Gen. Counsel, Robert L. Toomey, Asst. Gen. Counsel, Washington, D. C., for amicus curiae, Civil Aeronautics Bd.

Paul Rodgers, Gen. Counsel, Washington, D. C., for Nat. Ass'n of Regulatory Utility Comm.

## OPINION

LUONGO, District Judge.

This is a suit by Allegheny Airlines, Inc. (Allegheny) to have declared null and void certain actions against it by the Pennsylvania Public Utilities Commission (PUC), and to enjoin permanently the PUC and its individual members from proceeding further against Allegheny or its employees for violations of the laws of the Commonwealth of Pennsylvania.

The matter is before the court on cross motions for summary judgment filed by Allegheny and PUC. All the facts have been stipulated. They will be

adverted to in the course of this opinion only to the extent deemed necessary to an understanding of the discussion of the legal issues.

## I. *Factual Background*

Allegheny was originally certificated by the PUC in 1941 to transport property by air in intrastate commerce within Pennsylvania pursuant to the Pennsylvania "Public Utilities Law", 66 P.S. § 1101, et seq. In January, 1949 Allegheny received a certificate from the Civil Aeronautics Board (CAB), the federal regulatory agency established under the Federal Aviation Act, 49 U.S.C. § 1301 et seq., to provide interstate passenger service over a route structure covering the District of Columbia and seven states, including Pennsylvania. In March, 1949 the PUC approved Allegheny's application to transport *persons* and property by air in intrastate commerce within Pennsylvania. The intrastate routes authorized by the PUC paralleled Allegheny's interstate routes within the boundaries of Pennsylvania.

Under its CAB certificate, Allegheny is a "local service" carrier, i. e., one which provides service between smaller cities, linking them with larger ones where connections can be made with the "trunk line" carriers (e. g., American Airlines, United Air Lines) which primarily provide long haul service between larger cities. Allegheny is now the largest "local service" carrier in the United States, with an interstate route structure covering seventeen states, the District of Columbia and parts of Canada. Allegheny has intrastate rights in nine of those states, including Pennsylvania. For the fiscal year ending September 30, 1969 its gross revenues aggregated almost $113,000,000, including a federal subsidy[1] of approximately $3,000,000. A little more than 2% of Allegheny's 1969 revenues were generated by intrastate traffic within Pennsylvania.

For the efficient operation of its interstate routes, Allegheny makes frequent changes in its patterns of service and schedules. Under federal law, Allegheny is permitted to make such changes without interference from the CAB so long as it provides adequate service. 49 U.S.C. §§ 1371(e) (4), 1374(a). See Capital Airlines, Inc. v. Civil Aeronautics Bd., 108 U.S.App.D.C. 215, 281 F.2d 48 (1960). The CAB does not require Allegheny to maintain direct plane service between intermediate points on its interstate routes, it being sufficient if Allegheny services each intermediate point on such routes by two round trips in each direction each day, regardless of point of origin or destination.

In 1963 Allegheny discontinued single plane direct service on the 71-mile Williamsport-Harrisburg segment of its PUC intrastate route No. 5. Since that time it has discontinued furnishing single plane direct service between some other pairs of points on its six intrastate routes[2] authorized by the PUC. It

---

1. The federal subsidy received by a local service carrier is determined by the need of a carrier for funds to make up operating deficits from unprofitable local, short-haul routes. In order for a carrier to be eligible for a federal subsidy, it must prove to the satisfaction of the CAB that the expenditures were those that any efficient and honest management would make. 49 U.S.C. § 1376.

2. Allegheny's present intrastate route structure is as follows:
 (1) Between Pittsburgh and Bradford.
 (2) Between Pittsburgh and Philadelphia via Johnstown, Altoona, Harrisburg, Lancaster, and Reading.

 (3) Between Pittsburgh and Stroudsburg/East Stroudsburg via Johnstown, Altoona, Bellefonte/State College, Lock Haven, Williamsport and Scranton/Wilkes-Barre.
 (4) Between Harrisburg and Scranton/Wilkes-Barre.
 (5) Between Erie and Harrisburg via Bradford and Williamsport.
 (6) Between Pittsburgh and Allentown/Bethlehem/Easton, via Johnstown, Altoona, Bellefonte/State College, Williamsport, Harrisburg and Scranton/Wilkes-Barre.

has also been furnishing service between some intrastate points not specified in its PUC certificate. The PUC has taken the position that its certificate requires Allegheny to maintain single plane direct service between all pairs of points on authorized intrastate routes in Pennsylvania, and that Allegheny may not provide intrastate service between points within Pennsylvania not specified in the PUC certificate.

After attempts to resolve the matter amicably the PUC issued rules (at different times) on Allegheny to show cause why its state certificate should not be cancelled or other penalties imposed (a) for abandoning direct plane service between Williamsport and Harrisburg; (b) for abandoning direct plane service between other pairs of points on its intrastate routes; and (c) for furnishing intrastate service not authorized by the PUC. At the hearing on the rule to show cause on the abandonment of Williamsport-Harrisburg direct service [3] Allegheny declined to present evidence and answered only that the PUC lacked jurisdiction over routes, flight frequency and schedules of intrastate carriage of persons and property where that service is part of a federally certificated route operated by a federally certificated interstate carrier operating under the rules and regulations of the CAB.

On June 23, 1969 the PUC entered an order making the rule absolute, imposing a fine of $5000 on Allegheny and directing Allegheny to reinstitute direct service between Williamsport and Harrisburg within thirty days or file a petition with the PUC to abandon such service. After the time for filing an appeal from the PUC order to the state courts had passed, Allegheny instituted the instant suit to enjoin the PUC and the individual members thereof from taking any actions against Allegheny or its officers based upon changes in patterns of service or frequency or scheduling of service.

Because of the nationwide impact of the outcome of this suit on the federal-state roles in the economic regulation of air commerce, both the CAB and the National Association of Regulatory Utility Commissioners (NARUC) sought, and were granted, leave to file briefs *amicus curiae*. The CAB also participated in oral argument. The CAB supported Allegheny's contentions on the merits but took "no position with respect to procedural issues or questions of judicial jurisdiction." (CAB's brief, page 6). NARUC's brief supports the PUC both on the merits and, in particular, in attacking the propriety of federal intervention in the absence of exhaustion of state processes.

## II. *Jurisdiction*

It is Allegheny's position in the instant suit that the PUC's attempt to exercise control over it is invalid as a matter of federal law because (a) the field of economic regulation of interstate air carriers, at least insofar as patterns of service and scheduling are concerned, has been preempted by the Federal Aviation Act of 1958, 49 U.S.C. § 1301 et seq., particularly §§ 1302 [4] & 1371(e)

---

3. The rule to show cause on items (b) and (c) has been stayed by the PUC pending the outcome of these proceedings.

4. 49 U.S.C. § 1302 reads, in pertinent part, as follows:
"In the exercise and performance of its powers and duties * * *, the Board shall consider the following * * * as being in the public interest, and in accordance with the public convenience and necessity:
(a) The encouragement and development of an air-transportation system properly adapted to the present and future

needs of the foreign and domestic commerce of the United States, of the Postal Service, and of the national defense;
(b) The regulation of air transportation in such manner as to recognize and preserve the inherent advantages of, assure the highest degree of safety in, such transportation, and to improve the relations between, and coordinate transportation by, air carriers;
(c) The promotion of adequate, economical, and efficient service by air carriers at reasonable charges * * *;
* * * * *
(f) The promotion, encouragement, and

(4)[5] of the Act; (b) the PUC orders conflict with Allegheny's rights and obligations under its CAB certificate of public convenience and necessity; and, (c) the PUC orders attempting to regulate patterns of service and scheduling impose an undue burden on interstate air commerce. Although Allegheny and the CAB concede that the states have authority to control certain economic aspects [6] of intrastate air commerce, they contend that such authority does not extend to a federally certificated air carrier servicing an interstate-intrastate route. Accordingly, Allegheny asserts that its dispute with the PUC presents a controversy arising under the Constitution and laws of the United States and that this court's jurisdiction [7] is properly invoked under 28 U.S.C. § 1331(a).[8] It asserts further that the federal courts should decide the federal questions rather than leave them for determination by state tribunals. I disagree.

■ In suits in the federal courts arising out of proceedings pending or threatened in state tribunals, the federal court's jurisdiction may not be predicated upon federal question defenses to the state proceedings.[9] See Public Serv. Comm. of Utah v. Wycoff, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); Public Utilities Comm. of California v. United Air Lines, Inc., 346 U.S. 402, 74 S.Ct. 151, 98 L.Ed. 140 (1953); rev'g 109 F. Supp. 13 (N.D.Cal.1952); California v. Oroville-Wyandotte Irrigation Dist., 409 F.2d 532 (9th Cir. 1969); Bonanza Air Lines, Inc. v. Public Serv. Comm. of Nevada, 186 F.Supp. 674 (D.Nev.1960). It is only if the state *complaint* raises federal questions that the federal court's jurisdiction may be based on federal question grounds. Public Serv. Comm. of Utah v. Wycoff, *supra*.

■ Allegheny, in the instant suit, seeks a declaration that since it is an interstate carrier, it is immune, as a matter of federal law, from the exercise of control by the PUC. The proceedings instituted by the PUC against Allegheny, however, raise only questions of state law, i. e., the extent of the rights and duties conferred upon Allegheny by the state certificate of public convenience and necessity issued pursuant to Pennsylvania's "Public Utility Law", 66 P.S. § 1101 et seq. The PUC's complaints raise no federal questions. The federal questions do not enter the picture until they are injected by Allegheny as a matter of defense to the state complaints. Under such circumstances, to quote from Wycoff, *supra*, 344 U.S. at p. 248, 73 S.Ct. at p. 243:

"[f]ederal courts will not seize litigations from state courts merely because one, normally a defendant, goes to

5. 49 U.S.C. § 1371(e) (4) reads, in pertinent part, as follows:
"No term, condition, or limitation of a certificate shall restrict the right of an air carrier to add to or change schedules, equipment, accommodations, and facilities for performing the authorized transportation and service as the development of the business and the demands of the public shall require. * * *"

6. Safety regulations involving aircraft and air flights are exclusively within the jurisdiction of the Federal Aviation Administration.

7. Neither party requested the convening of a three-judge court under 28 U.S.C. § 2281. Since it appears that Allegheny is not attacking the constitutionality of the Pennsylvania Public Utility Law, but rather is basing its argument generally on supremacy of federal law, I have assumed that the matter is properly before me as a single judge. See Swift & Co. v. Wickham, 382 U.S. 111, [86 S.Ct. 258, 15 L.Ed.2d 194] (1965); Pennsylvania Public Utility Comm. v. Pennsylvania R.R. Co., 382 U.S. 281, 86 S.Ct. 423, 15 L.Ed. 2d 324 (1965).

8. 28 U.S.C. § 1331(a) reads as follows:
"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter of controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

9. There are exceptions to this principle, notably in suits arising under the Civil Rights Act, 42 U.S.C. § 1981 et seq., 28 U.S.C. § 1443. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965).

federal court to begin his federal-law defense before the state court begins the case under state law."

■ Although this is not properly a federal question matter, there is nevertheless jurisdiction in this court on the grounds of diversity of citizenship. 28 U.S.C. § 1332(a).[10] It affirmatively appears from Allegheny's complaint that it is a Delaware corporation with its principal place of business in the District of Columbia; that the PUC is an agency of the Commonwealth of Pennsylvania; that the individual defendants are all citizens and residents of the Commonwealth of Pennsylvania; and that the amount in controversy exceeds $10,000, consequently, this court has jurisdiction on diversity grounds.

### III. *Propriety of Federal Intervention*

Notwithstanding that there is jurisdiction, the question remains whether this court should hear and determine the substantive issues raised by the parties and exercise its power to grant the relief requested. The relief which Allegheny seeks is (1) a declaration that it is not subject to control by the PUC because it is an interstate carrier, and (2) a permanent injunction restraining enforcement of PUC's orders against it or its employees.

■ Although Allegheny's complaint is not, in terms, brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, the first portion of its prayer for relief is declaratory in nature. The Declaratory Judgment Act provides that in a case of actual controversy a competent federal court "may declare the rights and other legal relations of any interested party * * * whether or not further relief is or could be sought." But whether to grant declaratory relief in a particular case is a matter committed to

the court's sound discretion. See A. L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 82 S.Ct. 337, 7 L. Ed.2d 317 (1961); Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); California v. Oroville-Wyandotte Irrigation Dist., *supra.*

■ The second portion of the relief sought is injunctive and whether a federal court should use its equity powers to enjoin the enforcement of orders of a state administrative agency is also a matter for the exercise of the court's sound discretion. Alabama Public Serv. Comm. v. Southern Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).

■ The Supreme Court of the United States has ruled that where a private party seeks either declaratory or injunctive relief against a state administrative agency, federal courts ordinarily should abstain from exercising their powers in the interest of federal-state comity. Public Serv. Comm. of Utah v. Wycoff, *supra*; Alabama Public Serv. Comm. v. Southern Ry. Co., *supra.* In *Wycoff* there was express disapproval of attempts by lower federal courts to give anticipatory declarations as to state regulatory statutes, including determinations as to the authority of a state administrative agency over an interstate carrier, the Supreme Court stating, 344 U.S. at p. 247, 73 S.Ct. at p. 242:

"It is the state courts which have the first and last word as to the meaning of state statutes and whether a particular order is within the legislative terms of reference so as to make it the action of the State."

Whenever, therefore, the dispute between a private party and a state administrative agency concerns an unsettled question of state law, the federal courts should abstain from awarding declarato-

10. 28 U.S.C. § 1332(a) reads as follows:
"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
(1) citizens of different States;

(2) citizens of a State, and foreign states or citizens or subjects thereof; and
(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties."

ry relief. See Bonanza Air Lines, Inc. v. Public Serv. Comm. of Nevada, *supra*.

■ The doctrine of "equitable abstention" has only recently developed in the federal court system. See Wright, Federal Courts § 52; Note, Judicial Abstention From the Exercise of Federal Jurisdiction, 59 Colum.L.Rev. 749 (1959). As it applies to disputes between private parties and state administrative agencies, the primary thrust of the doctrine is that where an order of the state agency predominantly affects local matters, if there is available to the aggrieved party adequate state judicial review, the federal courts should refuse to exercise their equity powers to restrain enforcement of the administrative order, thus avoiding unnecessary federal-state conflict. See Alabama Public Serv. Comm. v. Southern Ry. Co., *supra*; Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Railroad Comm. of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368 (1940), as amended, 311 U.S. 570, 61 S.Ct. 343, 85 L.Ed. 358 (1941). Cf. Sayers v. Forsyth Bldg. Corp., 417 F.2d 65 (5th Cir. 1969); Lerner v. Town of Islip, 272 F.Supp. 664 (E.D.N.Y.1967); Atlantic Freight Lines, Inc. v. Pennsylvania Public Utility Comm., 109 F.Supp. 385 (W.D.Pa.1952). But see Public Utilities Comm. of Ohio v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943) (where the exercise of federal court's equity powers was approved because of an inordinate delay in disposing of the matter in dispute). They should exercise such powers only when they are convinced that asserted federal rights cannot be preserved except by the grant of the extraordinary relief of an injunction. Alabama Public Serv. Comm. v. Southern Ry. Co., *supra*. See also, Railroad

Comm. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ The instant case is clearly one for the application of the doctrine of federal abstention.

First, the dispute between the PUC and Allegheny predominantly affects local matters, i. e., intrastate air service and the scope of authority and procedures of the state administrative agency.

Second, the dispute involves an unsettled question of state law, i. e., the extent of the PUC's authority to regulate intrastate air rights granted to an interstate air carrier. The parties have cited no Pennsylvania authorities defining the limits of the PUC's authority over rights granted to such carriers.[11] Until the state courts speak to the question we cannot know whether they will interpret the PUC's authority under the state act narrowly or broadly. In making their determination as to the scope of the PUC's authority, the state courts are bound, just as the federal courts are, to interpret and apply the federal Constitution and laws and all of the arguments which Allegheny has sought to raise here under the interstate commerce and supremacy clauses of the federal Constitution must be given full consideration by the state courts. See Bonanza Air Lines, Inc. v. Public Serv. Comm. of Nevada, *supra*.

Finally, Pennsylvania law provides adequate judicial review of the actions of the PUC. At the time the PUC's order was entered Allegheny could have obtained review by seeking a preliminary injunction in the Court of Common Pleas of Dauphin County,[12] with a full hearing on the merits (66 P.S. § 1441) and right of appeal to the Superior and Supreme Courts of Pennsylvania; or it might have appealed directly to the Superior Court to have the order of the PUC de-

11. Since the state courts have not as yet determined the extent of PUC authority in this field, this decision does not conflict with City of Chicago v. Atchison, T. & S. F. Ry. Co., 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958).

12. Jurisdiction is now vested in the Commonwealth Court of Pennsylvania by "The Commonwealth Court Act", 17 P.S. § 211.1 et seq.; 17 P.S. § 211.14(a) (55).

**414**

clared null and void (66 P.S. § 1431). Under either procedure, there was available to Allegheny process for obtaining a writ of supersedeas to stay enforcement of the order pending judicial disposition. (66 P.S. § 1433). Federal questions raised in any of the state court proceedings would be reserved for final review, by certiorari, to the Supreme Court of the United States, Public Serv. Comm. of Utah v. Wycoff, *supra.*

 The foregoing are the state procedures which were available to Allegheny at the time the PUC's orders were entered. The time for appeal to the state courts has long since passed. It appears that Allegheny may have deliberately permitted the appeal time to pass in order to obtain a ruling from the federal court as to the extent of the state administrative agency's authority over it. If Allegheny has, by that tactic, irretrievably lost the opportunity for judicial review of the administrative order, it was by its own choice. The fact that it has no other recourse for review is not sufficient reason for this court to exercise its power. Allegheny's evasion of state procedures should not be rewarded by a federal court of equity which must always be actuated by a "scrupulous regard for the rightful independence of state governments." Alabama Public Serv. Comm. v. Southern Ry. Co., *supra,* 341 U.S. at p. 349, 71 S. Ct. at p. 768. Permitting the bypassing of state procedures would lead to federal district courts becoming courts of review for state administrative agencies and to needless conflict between federal and state governments. See Trapp v. Goetz, 373 F.2d 380 (10 Cir. 1966).

For the foregoing reasons, this court will abstain from exercising its jurisdiction to consider the substantive issues sought to be raised by the parties. Allegheny's motion for summary judgment will be denied. PUC's motion for summary judgment, to the extent that it seeks dismissal of these proceedings, will be granted.