THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH BROWN, Relator, *v.* JOHN F. McNEILL, as Superintendent of Matteawan State Hospital, Respondent.

Supreme Court, Dutchess County, July 23, 1962.

*Joseph Brown,* relator in person. *Louis J. Lefkowitz, Attorney-General (Manuel T. Murcia* of counsel), for respondent. *Burton H. Hall* for Workers Defense League, *amicus curiæ.*

CLARE J. HOYT, J.   Relator, an inmate of Matteawan State Hospital, has been granted a writ of habeas corpus upon which he seeks his release from Matteawan upon two grounds, first, that he is sane and, second, that section 412 of the Correction Law, pursuant to which section he was transferred to Matteawan State Hospital from the Harlem Valley State Hospital, is unconstitutional.

Relator was committed to Matteawan on November 25, 1953 and he claims his confinement to be illegal since there is no criminal charge of any type pending against him. He further alleges that he is now and has been for a number of years mentally competent and that he has not been violent, disturbed or assaultive.

The fact that no criminal charge is pending against the relator does not invalidate his detention. Under section 412 of the Correction Law, a person who has been validly committed to a State mental hospital operated by the Department of Mental Hygiene and who has been previously sentenced to a term of imprisonment in any correctional institution of the Department of Correction and "who still manifests criminal tendencies" may be transferred upon the request of the director of the State mental

hospital to which he was originally committed to Matteawan upon an administrative order of the Commissioner of Mental Hygiene.

There are, thus, two questions presented to the court, the first one being whether relator has regained his sanity and, if that question be determined in the negative, whether his retention at Matteawan under this administrative transfer pursuant to section 412 of the Correction Law constitutes a deprivation of relator's constitutional rights.

On the return day of the writ, the relator appeared pro se without offering any expert testimony as to his alleged sanity. Relator took the stand and in an unsworn statement claimed he was sane and entitled to his release. He also stated that while confined at Harlem Valley State Hospital he assaulted an employee of the hospital and was thereafter transferred to Matteawan. There is no question of the validity of relator's commitment to Harlem Valley State Hospital nor is there any question as to his prior commitment to an institution of the Department of Correction.

Dr. Lanzkron, a licensed psychiatrist and Assistant Director at Matteawan State Hospital, testified as to relator's mental condition and established to the satisfaction of the court that relator remains insane and should not be released on the basis of his present mental condition.

The remaining question is the constitutionality of that portion of section 412 of the Correction Law which provides for the transfer to Matteawan upon the written order of the Commissioner of Mental Hygiene of any insane inmate of another State hospital who has previously been sentenced to a term of imprisonment in any correctional institution and who still manifests criminal tendencies. This section was held constitutional in *People ex rel. Monaco* v. *McNeill* (299 N. Y. 605) and its constitutionality has not been questioned or attacked in a New York court since that time to the knowledge of this court.

The decision in the *Monaco* case was based upon Special Term's finding, according to the statement prepared by the State Reporter from appeal papers, "that relator had been properly transferred under section 412 [and] that relator's contention as to the statute's unconstitutionality presented little merit since 'the section has application only to the transfer of patients already inmates of other State hospitals' and that section 85 of the Mental Hygiene Law 'clearly relates to patients who prior to their commitment have no criminal record in contradistinction to section 412 of the Correction Law which provides for

the transfer of a patient " who has previously been sentenced to a term of imprisonment in any correctional institution, and who still manifests criminal tendencies ".' " (*Supra*, p. 606.)

Section 412 of the Correction Law is a portion of chapter 43 of the Consolidated Laws which was enacted by chapter 243 of the Laws of 1929. It was amended by chapter 264 of the Laws of 1959 by the addition of the first two sentences of the second paragraph. At present, section 412 provides:

" § 412. Transfers from other state hospitals to Matteawan state hospital. The commissioner of mental hygiene may, by order in writing, transfer to the Matteawan state hospital any insane inmate of another state hospital, who was held under any other than a civil process, committed thereto upon the order of a court of criminal jurisdiction or of a judge or justice of such a court; or any patient who has previously been sentenced to a term of imprisonment in any correctional institution, and who still manifests criminal tendencies, or any such patient who has previously been an inmate of the Matteawan state hospital.

" Any inmate who has been transferred to the Matteawan state hospital pursuant to this section may thereafter again be transferred to any appropriate institution in the department of mental hygiene or the department of correction upon the order of the commissioner of mental hygiene and the consent of the head of the department having jurisdiction of the institution to which the inmate is to be transferred. The superintendent of Matteawan state hospital may discharge a patient who has recovered or who has improved so as to be no longer dangerous to himself or others. All persons committed to said Matteawan state hospital shall be a charge upon the state." (As amd. by L. 1959, ch. 264, eff. April 8, 1959.)

Section 85 of the Mental Hygiene Law provides for judicial proceedings leading to a court certification that a patient confined to a State mental institution without any prior sentence to a correctional institution " has committed or is liable to commit an act or acts which if committed by a sane person would constitute homicide or felonious assault, or is so dangerously mentally ill that his presence in such a hospital is dangerous to the safety of other patients therein " (subd. 1), which requires that patient's transfer to Matteawan.

Relator relies upon the case of *United States ex rel. Carroll* v. *McNeill* (294 F. 2d 117) for the proposition that the portion of section 412 providing for an administrative transfer to Matteawan is unconstitutional. The *Carroll* case was decided by the United States Court of Appeals for the Second Circuit on July 26, 1961. The court held that since section 412 did not

require a hearing be granted to an ex-convict charged with criminal tendencies prior to his transfer by administrative order from a State mental hospital to Matteawan and that since section 85 of the Mental Hygiene Law contained certain procedural safeguards with respect to the transfer from a State mental hospital to Matteawan of a patient who had not been previously confined to a correctional institution, section 412 of the Correction Law was unconstitutional. Certiorari was granted by the United States Supreme Court (368 U. S. 951) but during the pendency of the appeal the relator Carroll died and the Supreme Court declared the Court of Appeals' decision moot, vacated the judgment and remanded the case to the District Court with direction to dismiss the cause as moot (369 U. S. 149).

The decision in the *Carroll* case (*supra*) is thus not *stare decisis* although, of course, its rationale may be accepted if deemed sound.

This court does not accept the rationale of the *Carroll* case.

Relator is not deprived of his liberty by reason of the transfer from Harlem Valley State Hospital to Matteawan State Hospital although the former is under the jurisdiction of the Department of Mental Hygiene and the latter is under the control of the Department of Correction. In each instance the relator's detention is dependent upon the continuance of his insanity, which issue he has, as demonstrated in the instant case, the right to question at any time by habeas corpus.

By reason of the 1959 amendment (*supra*) to section 412 of the Correction Law, inmates of Matteawan may be returned by administrative order to hospitals of the Department of Mental Hygiene or may be discharged when the patient " has recovered or * * * has improved so as to be no longer dangerous to himself or others ".

The only objection that could be raised by the relator is that he may be more restricted at Matteawan, might enjoy fewer privileges and would at Matteawan be confined with dangerous persons who are liable to harm or adversely affect him. This objection, however, is not in the court's opinion sufficient to declare the statute providing for this administrative transfer to be unconstitutional.

It is for the Legislature to determine the mechanics and proceedings for such transfer provided, of course, there is not a deprivation of the rights of the individual and it is for the court to construe the statute, if possible, to avoid the conclusion that it is unconstitutional. It is the well-settled principle of statutory construction that statutes should be construed to avoid the conclusion that they are unconstitutional (*Matter of Coates,*

9 N Y 2d 242, 253; *Matter of New York Post Corp.* v. *Leibowitz,* 2 N Y 2d 677, 687; *People* v. *Barber,* 289 N. Y. 378, 385). Statutes should be interpreted, if possible, in such a way as to free them from constitutional doubts (*United States* v. *Jin Fuey Moy,* 241 U. S. 394; *Machinists* v. *Street,* 367 U. S. 740).

In accordance with the *Monaco* case (*supra*), this court is of the opinion that the administrative transfer is constitutional. However, there must be some guarantee or assurance that the administrative transfer was not made capriciously or arbitrarily, and this administrative determination should thus be subject to review.

The Attorney-General suggests that an article 78 proceeding would provide a proper review. It must be recognized, however, that this right might prove meaningless to unjustly transferred inmates who might not seek such relief within the requisite time and who would be unnecessarily burdened by the nature of the proceedings.

It is this court's opinion that the remedy of habeas corpus should be available to the inmate who claims his transfer was wrongful.

In *People ex rel. Brown* v. *Johnston* (9 N Y 2d 482) habeas corpus was held to be a proper remedy for a prisoner transferred by the Department of Correction from one prison to a State Hospital for the insane maintained at another penal institution. Although this case involved the administrative transfer between institutions within the Department of Correction, it resulted in relator's confinement with male prisoners declared insane and " the possibility that he may be illegally confined with deranged persons who are liable to harm and/or adversely affect him " (pp. 484–485), a situation comparable to that which may be experienced by the relator herein.

" Since the writ of habeas corpus has traditionally been relied upon to alleviate the oppression of unlawful imprisonment and abuses of similar character, it can be invoked to obtain a hearing to test the validity of a commitment in an institution for the criminally insane. We cannot merely by virtue of the valid judgment sanction the subsequent abrogation of lawful process. * * *

" To implement this duty and secure the relief due the prisoner, we can and should recognize that ' [C]ourts have always asserted and exercised authority which, though perhaps not expressly established by statute, is " based upon the inherent right and duty of the courts to protect the citizen in his constitutional prerogatives and to prevent oppression or persecution." ' " (*People* v. *Gersewitz,* 294 N. Y. 163, 167; *People ex rel.*

*Saia* v. *Martin,* 289 N. Y. 471.) '' (*People ex rel. Brown* v. *Johnston, supra,* p. 485.)

In this proceeding the constitutionality of section 412 was the main argument advanced on relator's behalf and neither the return submitted by the respondent nor the evidence adduced at the hearing by the respondent or the relator fully disclosed the conduct of the relator which was the basis for the administrative transfer.

The matter is thus remanded for a further hearing. Respondent shall file within 30 days of the signing of the order herein an amended return setting forth in detail the acts and conduct of the relator which it is claimed constituted the manifestation of continued criminal tendencies, and upon the rehearing the court will take testimony as to the incident or incidents and conduct of the relator claimed by the respondent to have been the basis of the transfer and the court will then determine whether the administrative transfer was properly made.

The respondent shall within 20 days of receipt of this decision submit an order herein.

The court is not unmindful of the burden the procedure herein outlined may place upon the respondent. As was said in *People ex rel. Brown* v. *Johnston* (*supra,* p. 486) : '' Although the availability of the writ of habeas corpus for this purpose may be a source of administrative inconvenience, it is not justification for a denial. It is well here to repeat that ' the rights of the best men are secure only as the rights of the vilest and most abhorrent are protected.' (*People* v. *Gitlow,* 234 N. Y. 132, 158.) ''