**UNITED STATES of America ex rel. Judith MORGAN, Petitioner,**

v.

**Solon C. WOLFE, M.D., Acting Superintendent of Matteawan State Hospital, Beacon, New York, Respondent.**

United States District Court
S. D. New York.
July 21, 1964.

Arthur A. Snyder, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, Isadore Siegel, New York City, of counsel, for respondent.

EDELSTEIN, District Judge.

Petitioner, an inmate of the Matteawan State Hospital for "insane criminals," N.Y.Correction Law, McKinney's Consol.Laws, c. 43, § 400 [1] has petitioned this court for a writ of habeas corpus, 28 U.S.C. § 2242 (1952). Petitioner is presently confined as an insane person pursuant to an order of commitment issued by the Supreme Court of Kings County on June 24, 1957, and pursuant to an order of transfer issued by the Department of Mental Hygiene of the State of New York on January 14, 1958. The transfer order transferred petitioner from Creedmoor State Hospital, the place of her June 24, 1957, confinement, to Matteawan State Hospital. Both the commitment and transfer order were is-

sued pursuant to §§ 870 and 872 of the New York Code of Criminal Procedure. These sections, more fully explained infra, prescribe New York's statutory scheme for the determination of the mental competency of criminal defendants and the administrative procedure for their commitment and subsequent transfer.

The procedural sequence leading to petitioner's commitment and her ultimate transfer was initiated upon her appearance on March 14, 1957, in the City Magistrate's Court, New York County, Felony Part, on the charge of felonious assault. The Magistrate found that "there [was] reasonable ground to believe that such defendant is in such state of idiocy, imbecility or insanity that [s]he is incapable of understanding the charge or proceeding or of making [her] defense * * *" N.Y.Code of Crim.Proc. § 870,[2] and ordered her com-

---

1. § 400, *Establishment and purpose of the Matteawan state hospital.*

    "The grounds, buildings and property located at Beacon in the county of Dutchess, and used for the purpose of the hospital for insane criminals, shall continue to be known as the Matteawan state hospital, to be used for the purpose of holding in custody and caring for such insane persons held under any other than a civil process as may be committed to the said institution by courts of criminal jurisdiction, or transferred thereto by the commissioner of mental hygiene, and for such persons as may be committed thereto pursuant to the provisions of section eighty-five of the mental hygiene law, * * *."

    This statute, together with §§ 870 and 872 of the Code of Criminal Procedure and § 76 and § 85 of the Mental Hygiene Law, McKinney's Consol.Laws, c. 27, were amended subsequent to petitioner's commitment and transfer. The statutes, as they appear herein, are not, then, in their most up-dated form, but they appear in the form that they were in at the time of petitioner's commitment pursuant to the statutory procedure.

2. "§ 870. *Order for examination as to sanity of a defendant*

    "If at any time it shall appear to a court or magistrate having jurisdiction

of a defendant charged with a felony or misdemeanor but not under indictment therefor, or charged with an offense which is not a crime, or in the city of New York charged with a misdemeanor in a case where an information has not been filed by the district attorney, that there is reasonable ground to believe that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge or proceeding or of making his defense, the court or magistrate upon his own motion or that of the district attorney or of the defendant may in his discretion order such defendant to be examined to determine the question of his sanity. The provisions of sections six hundred fifty-nine, six hundred sixty, six hundred sixty-one, and six hundred sixty-two of this code shall apply. Upon making such order the court or magistrate shall notify the district attorney thereof. If the two psychiatrists designated to examine the defendant do not agree in their findings, the superintendent of the hospital, or in the city of New York the director of the division of psychiatry of Bellevue Hospital or Kings County Hospital, shall appoint a third psychiatrist to examine the defendant, and his examination shall be deemed a part of the examination ordered by the court or magistrate."

mitted for a mental examination. An examination by two psychiatrists designated pursuant to § 872[3] and § 659[4] of the Code of Criminal Procedure resulted in their unanimous finding that petitioner was mentally ill and in need of care and treatment. In due course, petitioner was committed to Creedmoor pursuant to the order of the Kings County Supreme Court, and was subsequently administratively transferred from Creedmoor to Matteawan.

Petitioner's complaints of constitutional deprivation extend to every stage of the proceedings held herein. Her first attack is upon the proceedings held in the City Magistrate's Court. As to these proceedings, she contends that the committing magistrate had no basis or record for ordering her to be committed. for a sanity examination pursuant to § 870 because the magistrate could not have had reasonable ground to believe that she was insane. She further complains that her commitment hearing in the Kings County Supreme Court was a perfunctory one and she emphasizes that she was not given an opportunity to rebut the testimony of the examining psychiatrists and was therefore deprived of Due Process as guaranteed by the Fourteenth Amendment. Petitioner also contends that she was denied Due Process of Law by the alleged refusal of her custodians at Creedmoor to mail out her petition seeking a review by a jury of her certification, as provided for by § 76,.

---

3. "§ 872. *Defendant found to be in a state of idiocy, imbecility or insanity; procedure where charged with crime*

"In the event that the defendant is not indicted, or in the city of New York in the case of a misdemeanor an information is not filed against him by the district attorney, and if two duly designated psychiatrists find that the defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge or proceedings or of making his defense, the director or other person is charge of the hospital, or in the city of New York the director of the division of psychiatry of Bellevue Hospital or Kings County Hospital, shall notify the court in which the charge is pending, the district attorney and, in addition, give notice to a proper public officer of the district or locality from which the defendant was received, as set forth in subdivisions one and two of section eighty-one of the mental hygiene law, and it shall be the duty of such officer to make application for the certification of such defendant as provided in the mental hygiene law for the commitment of a person not in confinement on a criminal charge, and such public officer shall give the district attorney of the county in which the defendant is charged with the crime at least three days' notice thereof. The court in which such proceedings are instituted may commit the defendant to any appropriate state institution of the department of correction or the department of mental hygiene, *and a person so committed may at any time during the period of his* commitment be transferred to any appropriate state institution of the department of correction or of the department of mental hygiene, as may be approved by the heads of such departments. * * *"

" * * * None of the provisions of this title shall prevent the district attorney at any time from reopening the matter and from presenting evidence against the defendant to a grand jury. If the defendant be indicted or in the city of New York in the case of a misdemeanor an information be filed against him by the district attorney, the warrant shall be lodged with the director of the institution where he is confined and all further proceedings shall be had as if he had been indicted prior to his commitment." (emphasis supplied)

4. N.Y.Code of Criminal Procedure, § 659 provides:

"*Examination as to sanity; by whom made.*

" * * * In New York city upon request of the court the director of the division of psychiatry of the department of hospitals of such city shall cause an examination of such defendant to be made. * * *"

" * * * In New York city, the director of the division of psychiatry of the department of hospitals shall designate from the staff of such division two such qualified psychiatrists, of whom he may be one, to make such an examination; they shall be aided by an assistant corporation counsel asigned for that purpose by the corporation counsel of such city."

N.Y.Mental Hygiene Law.[5] Additionally, she urges that the portion of § 872 of the Code of Criminal Procedure [6] which authorized her transfer to Matteawan without a hearing, is unconstitutional under both the Due Process and the Equal Protection clauses of the Fourteenth Amendment. In expanding on this claim, she contends that the statute providing the State with the authority to transfer her by administrative order of the Commissioner deprived her of the notice and hearing which is indispensable to the fulfillment of the constitutional standards of Due Process owing to a transferee. In amplification of her Equal Protection argument, petitioner contends that the summary transfer provision of § 872 creates an arbitrary and capricious classification. She points out that mental patients who are committed pursuant to § 872 of the Code of Criminal Procedure are not provided with a hearing relative to their transfer to Matteawan. In contradistinction to her status, petitioner points out that patients whose commitments do not arise out of a criminal charge but who are committed under the provisions of §§ 74, 76 of the Mental Hygiene Law are provided with notice and hearing upon their transfer to Matteawan. N.Y. Mental Hygiene Law § 85.[7] This alleged "so-called" preference of the "non-criminally committed" patient over those patients such as petitioner, who are criminal defendants, is asserted by petitioner to be unconstitutional because it is invidious, irrational and without justification. To support its contention that the petitioner's temporary commitment for observation and her subsequent commitment and transfer are valid, the State has submitted the following: copies of the proceedings

5. Section 76, MENTAL HYGIENE LAW provides in pertinent part:
"*Review of proceedings and order of certification*
"If a person certified to an institution, pursuant to this chapter, or any relative or friend in his behalf, be dissatisfied with the final order of a judge or justice certifying him, he may, within thirty days after the making of such order, obtain a rehearing and a review of the proceedings already had and of such certification, upon a petition to a justice of the supreme court other than the justice making such certification, who shall cause a jury to be summoned as in the case of proceedings for the appointment of a committee for mentally ill person where the question of fact arising upon the competency of the person is tried by a jury, and shall try the question of the mental illness of the person so certified in the same manner as provided in said proceedings. * * *"

6. Supra, note 3.

7. Section 85, Mental Hygiene Law, prior to its repeal and replacement in 1963, provided in pertinent part:
"*Proceedings for certification to Matteawan state hospital of certain dangerous mentally ill patients of state hospitals in the department*
"1. The director of any state hospital, upon order of the commissioner, upon ascertaining that any person, duly certified to and a patient of such hospital as a mentally ill person, has committed or is liable to commit an act or acts which if committed by a sane person would constitute homicide or felonious assault, or is dangerously mentally ill so that his presence in such a hospital is dangerous to the safety of other patients therein or officers or employees thereof, shall certify such fact or facts to the district attorney of the county wherein such hospital is located.
"2. * * * [T]he court may appoint a commission of not more than three disinterested persons to examine such person and report to the court as to his dangerous mental illness.
"3. The commission must summarily proceed to make their examination. Before commencing they must take the oath prescribed in the civil practice act to be taken by referees. They must be attended by the district attorney of the county, and may call and examine witnesses and compel their attendance. The person whose dangerous mental illness is being inquired into may be represented by counsel in the proceedings. When the commissioners have concluded their examination they must forthwith report the facts to the court with their opinion thereon."
The statute was amended in 1963 to provide the patient with notice and hearing relative to the judicial determination of "dangerous mental illness."

and orders in the City Magistrate's Court and the Kings County Court, the stenographic court transcripts together with copies of hospital records containing entries up to and including July 30, 1963, as well as the correspondence between the Department of Mental Hygiene and the Department of Correction concerning petitioner's January 14, 1958 transfer. The facts which appear from this record are as follows:

On May 13, 1957, petitioner was arrested in New York City and the next day was charged with having committed a felonious assault on one Sam Smith by means of stabbing him in the back with a long-bladed kitchen knife. This was a case of mistaken identity. Petitioner had been lying in wait for her intended victim, a judge who had ordered the dismissal of an $8,000,000 civil suit brought by her against several state officials and judges, in which she alleged that they had "conspired" to deprive her of her constitutional rights by committing her to Harlem Valley State Hospital in 1947.

On May 14, 1957, petitioner, represented by private counsel, appeared in Magistrate's Court in New York City to answer the charge of felonious assault. The stenographic record reveals that during a discussion between court and counsel concerning petitioner's continued need for certain medication taken from her by the arresting officer [8] petitioner stated to the court that the medication "[was] a special treatment by a specialist who has just discovered a new treatment * * *" and that the medication was "to fill up the holes in my bone structure to try to do something for the eroded tissues of the cells of the nervous system." Included among the photostatic copies of the Magistrate Court's proceedings submitted by the State is a letter dated May 14, 1957, from the physician on duty at the House of Detention to the Attending Physician at Bellevue Hospital concerning petitioner, which reads as follows:

"Dear Doctor:

"Please admit this inmate who arrived at the House of Detention this evening. She threatened to commit suicide since arrival at the House of Detention for Women and appears to be living in a world of her own, is fully occupied with ideas of persecution, feels that people are against her and shows some grimaces, smiling pitifully at others.

8. "THE COURT: You can if you want to but suppose we do this, suppose I put it over for 48 hours, Counsellor, and they will have the complainant in here—
"MR. FRIEDMAN: Thursday. All right, may I make one request, Your Honor: When the defendant was arrested, she had in her possession, some pills which she is taking by physician's prescription for a condition of multiple neuritis from which she is suffering, and she needs those, and the officer said unless you instruct they be returned—
"THE COURT: Wait a minute now. That is a medical question here that you can take up with the doctor.
"MR. McDONOUGH: I think the doctor should prescribe.
"THE COURT: The doctor in the Tombs. I will put on here medical treatment requested so that Miss Morgan; will you listen to me, Miss Morgan, I am putting on your commitment medical treatment requested.
"THE DEFENDANT: Your Honor, this is special treatment by a specialist who has just discovered a new treatment and—
"THE COURT: Well, I am sure that the doctor—
"THE DEFENDANT: He doesn't know it.
"THE COURT: Well, we have to check these things—
"THE DEFENDANT: Pardon me. This is for to fill up the holes in my bone structure to try to do something for the eroded tissues of the cells of the nervous system.
"THE COURT: Well, I will put down medical treatment for you and you will—
"MR. FRIEDMAN: If Your Honor; if this is not out of order, could Your Honor kindly direct that the physician in the prison communicate with Miss Morgan's doctor so that he can check on these—
"THE COURT: When I mark it medical treatment, they will see I am marking on here medical treatment requested. Miss Morgan, where do you live?
* * * * * "

"She needs mental observation urgently for her own safety. X-ray of left fifth finger is indicated.

"Thanking you for your cooperation.

E. Hahn, M.D.
Physician on Duty"

The Magistrate's Court's file also contains an order by the Honorable Jack Nicoll, committing the petitioner to Kings County Hospital for a mental examination for a period of observation not to exceed 60 days, based on the court's reasonable belief in the defendant's insanity and her incapability of understanding the charges or proceedings so as to make a defense. See Code of Crim.Proc. § 870, supra. The commitment was consented to as evidenced by a handwritten notation in the margin of the order: "Consented to by Jacob Friedman, Esq., Att'y for defendant. J. Nicoll (signature)." Thereafter, pursuant to § 872, the director of the Kings County Hospital notified the Presiding Magistrate of the Felony Part of the Magistrate's Court that the patient had been carefully examined, found to be mentally ill, and certified to Creedmoor via Kings County Hospital.

Then, pursuant to the procedure prescribed for the mental examination of committed criminal defendants, two qualified psychiatrists were appointed to determine petitioner's mental condition. N.Y.Code of Crim.Proc. § 659, supra note 4. On May 15, 1957, these physicians executed the affidavit required by the statute, i. e., that they would faithfully and impartially inquire into the matter of the mental condition of the petitioner and render their report as to whether she was in such a state of idiocy and insanity that she was incapable of understanding the charges against her. N.Y.Code of Crim.Proc. §§ 660, 661.[9] The appointed psychiatrists made the requisite examination and rendered a written report dated May 28, 1957. These examiners, after observing her, concluded, inter alia, that the petitioner showed a tendency to injure herself, to injure others, to be "potentially dangerous." Their diagnosis of her mental illness was "schizophrenic reaction—paranoid type." N.Y.Code of Crim.Proc. § 662.[10] Further examinations by these

9. N.Y.Code of Criminal Procedure. § 660 Method of examination.
   "The psychiatrists so designated shall forthwith examine the defendant. Examinations may be made in the place where the defendant is detained, or, upon recommendation of said superintendent or director the court may commit the defendant for a reasonable period, not to exceed sixty days, for observation and examination to another place of detention or to such hospital as may be designated by such superintendent or director. * * *"
   § 661. Procedure; powers of examiners; subpoenas
   "Before commencing his duties hereunder each psychiatrist designated to make an examination ordered by the court shall take the oath prescribed by the civil practice act to be taken by referees, which shall be annexed to and made a part of the report hereinafter provided for. Such psychiatrists may continue such examination for such periods of time as may be necessary. They may examine witnesses and receive such other information relating to the subject of their inquiry as may aid them in reaching a determination and for such purpose may administer oaths and compel the attendance of witnesses and the production of books, papers and records deemed relevant or material. Subpoenas shall be issued and served by the clerk of the court having jurisdiction of the defendant upon the request of such psychiatrists."

10. Report of Examining Psychiatrists filed pursuant to § 872 of the Code of Criminal Procedure at p. 3, May 28, 1957. N.Y.Code of Crim Proc. § 662 provides:
    "Reports to court
    "Upon the completion of such examination of a defendant the superintendent of the hospital or director of the division of psychiatry of the department of hospitals of New York city, as the case may be, must forthwith transmit to the court in quadruplicate a full and complete report including the findings of the qualified psychiatrists who have conducted the examination to the effect that the defendant is, or is not, at the time of such examination in such

psychiatrists on June 7, 1957, June 14, 1957, and June 21, 1957, found petitioner's mental condition unimproved and unchanged.

On May 28, 1957, the Administrative Assistant of the Kings County Hospital, pursuant to § 872 supra, filed a petition in the Supreme Court of Kings County praying that the court enter an order under § 872 of the Code of Criminal Procedure certifying the petitioner to an institution for the care and treatment of the mentally ill. The affidavits of service and the certificate of personal service, which are part of the record herein, plainly indicate that personal service of a notice of a hearing to be held on June 3, 1957, was made upon the petitioner. In addition, service by mail was effected upon petitioner's counsel. The certificate of service is signed by the Hon. Charles J. Beckinella, a Justice of the Kings County Supreme Court, the judge who eventually presided over the commitment hearing held pursuant to § 872.

The hearing on the Administrator's application for commitment was adjourned from June 3, 1957, until June 10, from June 10 until the 17th, and again from the 17th to the 24th of June, at which time Miss Morgan appeared with her counsel before Justice Beckinella. The adjournments, it would seem, were requested by petitioner's counsel in order to afford counsel an opportunity to produce medical witnesses to rebut the unequivocal and persuasive report of the court appointed psychiatrists that petitioner was insane. See transcript of proceedings In the Matter of an Application for the Certification of Judith Morgan, on Alleged Mentally Ill Person, Supreme Court, Kings County, Special Term, Part II, p. 2, (June 24, 1957). At the hearing, a Dr. Richard Hoffman, who was expected to appear as a rebuttal witness based on counsel's prior representations, did not do so. Some discussion ensued between court and counsel concerning the

doctor's non-appearance. Counsel represented that the doctor was ill. Justice Beckinella informed counsel that Dr. Hoffman had called the Justice on the telephone that morning and had stated to the Justice that he had no objection to the petitioner being committed so long as she was not sent to Matteawan. The doctor expressed the preference that the petitioner be sent either to Creedmoor or Brooklyn State Hospital, both located in the metropolitan New York area, rather than to Matteawan which is in Beacon, New York. His preference for a local commitment was based on the fact that it would "make it possible for [Dr. Hoffman] to treat her there or visit her there or do whatever he can for her there." Transcript, June 24, 1957, p. 4.

Petitioner was not present at this point or during the remainder of the discussion between counsel and the court although she had been present in the hearing room earlier. The court had petitioner sent from the hearing room during the discussion of Dr. Hoffman because it was apprehensive that petitioner might, because of Dr. Hoffman's statement, come to the conclusion that Dr. Hoffman was not going to appear in her interest, but would be against her. Then, in response to counsel's request to interrogate petitioner, the court declined to do so, stating that it would not substitute its own judgment for psychiatric rebuttal testimony. Petitioner's counsel did not object to the court's position and did not press the matter further. After some further colloquy concerning the venue of the proceeding and the right to review the court's determination by a jury trial [11] the court stated:

"*The Court*: I am sending her to Creedmoor; in the meantime. That will make it possible for you to have access to her. Whatever you do after that is up to yourself.

"*Mr. Friedman*: [Counsel] All right, your Honor.

state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him or the proceedings or of making his defense. * * * "

11. Supra, note 5.

*"The Court:* The papers recommend that this lady be sent to Mattawan [sic] State Hospital. But in view of the request of Dr. Hoffman and your request that she be accessible somewhere in the City of New York, I will certify her to Creedmoor State Hospital, and then you can make whatever moves you like. All right.

*"Mr. Friedman:* May I confer with her?

*"The Court:* Sure." Transcript, pp. 8–9.

Upon the termination of the hearing the court entered an order to the effect that:

"Upon the annexed notice and affidavit of service and upon such other facts and information as were produced before me, [sic] Patient appearing before me, and being satisfied that the above alleged mentally ill person may require mental care and treatment in an institution for care and treatment of the mentally ill within the meaning of the statute, and that she is in confinement under a criminal charge, it is hereby ordered, That the said Judith Morgan be admitted to Creedmoor State Hospital, an institution for the care and treatment of the mentally ill for observation and treatment for a period not exceeding 60 days."

On the order form the words MATTEAWAN STATE HOSPITAL were stamped or printed above the line under which the legend read: "(Insert official title of Institution)" but the word MATTEAWAN was crossed out and the word CREEDMOOR was inserted in its stead, as the court indicated it would be.

The court further ordered that the commitment order would become final if within 60 days from the date of its order the director or physician in charge of the mental institution filed an order with the County Clerk declaring that the petitioner was mentally ill and in need of continued care and treatment. Such a certificate was in fact duly filed by the Assistant Director of Creedmoor State Hospital within the requisite 60-day period and the commitment order thus became final. People ex rel. Jacobs v. Director of Gowanda State Hospital, 19 A.D.2d 858, 244 N.Y.S.2d 21 (4th Dept. 1963).

On July 16, 1957, an indictment was returned in the Court of General Sessions of New York County charging Judith Morgan with the crime of Assault, first degree, N.Y. Penal Law, McKinney's Consol.Laws, c. 40, § 240.[12] Assault first degree or felonious assault is punishable by imprisonment for a term not exceeding ten years. N.Y. Penal Law, § 241.[13] On the same date a bench warrant was issued by a judge of the Court of General Sessions. Since the petitioner had already been committed to Creedmoor at the time the indictment was returned the warrant could not be executed. Consequently, the warrant was lodged with the director of Creedmoor and pursuant to § 872 all further proceedings were continued as if petitioner had been indicted prior to her commitment.

On July 18, 1957, petitioner's attorney instituted proceedings pursuant to § 76 of the Mental Hygiene Law for a review and redetermination of the order certify-

12. N.Y.Penal Law, § 240 provides:
   *"Assault in first degree defined*
   "A person who, with an intent to kill a human being, or to commit a felony upon the person or property of the one assaulted, or of another:
   "1. Assaults another with a loaded fire arm, or any other deadly weapon, or by any other means or force likely to produce death; or,
   "2. Administers to or causes to be administered to or taken by another, poison, or any other destructive or noxious thing, so as to endanger the life of such other,
   "Is guilty of assault in the first degree."

13. N.Y.Penal Law, § 241 provides:
   *"Punishment for assault in first degree*
   "Assault in the first degree is punishable by imprisonment for a term not exceeding ten years."

ing petitioner to Creedmoor. N.Y. Mental Hygiene Law, § 76 [14] provides that if a person certified to an institution "or any relative or friend in his behalf" is "dissatisfied" with the final order of a judge certifying her to a mental institution, he or she may, within 30 days after the making of such order, obtain a rehearing and review of the proceedings upon petition to a justice of the Supreme Court, other than the one who made the certification. The justice to whom the petition is addressed is then required to summon a jury to whom the retrial and redetermination of the issue of mental illness is entrusted. Petitioner's application for review pursuant to § 76 of the Mental Hygiene Law was supported by a verified petition of her attorney. The review petition was made returnable on July 24, 1957. On the return day, the application was placed on the motion calendar but was marked withdrawn with the consent of the State and petitioner's counsel. The application was never renewed.

The final chapter in petitioner's odyssey from the Criminal Court to Matteawan involves her administrative transfer from Creedmoor State Hospital. On or about January 24, 1958, petitioner was transferred to Matteawan State Hospital pursuant to an order of transfer issued by the Commissioner of the Department of Mental Hygiene pursuant to the provision of § 872 of the Code of Criminal Procedure. The relevant portion of § 872 reads: "and a person [committed pursuant to § 870] may at any time during the period of his commitment be transferred to any appropriate state institution of the department of correction or of the department of mental hygiene, as may be approved by the heads of such departments." Id.

Petitioner attempted to obtain relief in the Supreme Court of Dutchess County, the Appellate Division of the Supreme Court and in the New York Court of Appeals, but her attempts were unavailing. And subsequent to these State court applications the United States Supreme Court denied her motion to file a petition for a writ of habeas corpus. The Supreme Court treated her papers as a petition for a writ of certiorari, which was denied. See Morgan v. McNeil, 369 U.S. 815, 82 S.Ct. 842, 7 L.Ed. 2d 792 (1962). There is no problem, then, as to her exhaustion of available state remedies and the State has raised none, so that the merits of her constitutional claims are now ripe for consideration. See 28 U.S.C. § 2254 (1952); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

■ One important contention requires preliminary attention prior to the determination of petitioner's constitutional claims set forth above. This contention is petitioner's assertion that she is not mentally ill, psychotic, or in any way dangerous to herself. She points out that a recent mental examination by a qualified psychiatrist at Matteawan disclosed that she was "rational mentally" and "competent." Although this court is obliged to consider the claims of constitutional deprivation advanced by a habeas corpus petitioner, petitioner's claim that she is no longer mentally ill may not be adjudicated in this forum on a petition for habeas corpus. "The care and treatment of the mentally ill are a function of the state in its role as *parens patriae*, and a federal court is not the proper forum in which to raise the question of sanity." United States ex rel. Eggleston v. Snow, 219 F.Supp. 417, 418 (S.D.N.Y.1963); Williams v. Shovlin, 207 F.Supp. 634 (M.D.Pa.1962); See Hall v. Verdel, 40 F.Supp. 941, 944 (W.D. Va.1941) (dictum).

■ Petitioner has requested in her papers that she be brought to court for the purpose of permitting her to testify in support of her constitutional claims. But petitioner's testimony is not required since the facts essential to the disposition of the legal issues raised by the contentions adequately and clearly appear from the copies of the records of

14. See Footnote 5, supra.

the State court proceedings. An evidentiary hearing is not, then, required. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L. Ed. 469 (1953);[15] United States ex rel. McNerlin v. Denno, 324 F.2d 46 (2d Cir. 1963).

■ Petitioner's first three claims which deal with (1) the inadequacy of the grounds for her commitment for observation in the Magistrate's Court; (2) the alleged denial of due process at her commitment hearing in the Kings County Supreme Court; and (3) the alleged deprivation of her right to a jury trial on the question of her sanity, are insubstantial. The New York authorities have long settled the rule that the Magistrate's order committing a criminal defendant for observation and examination involves an exercise of discretion by the magistrate and that this exercise of discretion must be based on facts, present as well as past, which lead him to the reasonable belief that the defendant is insane. See People ex rel. Schildhaus on Behalf of Weinstein v. Warden of City Prison, 37 Misc.2d 660, 235 N.Y.S.2d 531, 543 (Sup.Ct.1962); People ex rel. Apicella v. Superintendent of Kings County Hospital, 173 Misc. 642, 18 N.Y.S.2d 523 (Sup.Ct.1940); People v. Pershaec, 172 Misc. 324, 15 N.Y.S.2d 215 (Gen.Sess.1939); People v. Omilanowicz, 162 Misc. 396, 294 N.Y.S. 741 (Gen. Sess.1937).

Petitioner's present counsel points to the brief stenographic transcript of the Magistrate's Court proceedings and argues that the record before that court was so totally devoid of evidentiary support for a commitment order that the commitment for observation was unconstitutional. Going a step further, counsel contends that the invalidity of the initial magistrate's commitment infected the validity of all subsequent proceedings.

Counsel's argument on this score relies heavily on the long line of § 870 commitment cases cited above, and on the most recent case dealing with the question of the quantum of evidentiary support required to support a magistrate's reasonable ground for believing a criminal defendant to be insane. See People ex rel. Schildhaus v. Warden, supra, 235 N.Y.S. 2d at 536, 548. The Schildhaus case involved one Weinstein, a landlord, who appeared before a City Magistrate as a defendant in a number of cases involving building code violations. Weinstein pleaded guilty to seven charges of violating that portion of the New York City Health Code which provided that a residential building owner is under a duty to supply heat. The magistrate heard argument from the tenants' counsel to the effect that they had been forced to heat the buildings themselves for a time during the winter and that several children living there had become ill. The defendant twice during the hearing stated that he did not feel well and asked for a doctor. The defendant said nothing else throughout the proceedings. Based on this meager record the magistrate stated that he had never "had a defendant before [him] who was as cruel as you are, absolutely callous to the feelings of other people, little children, sick children * * * I think you are a cruel, vicious man and I don't think that you could possibly be normal—so therefore you are committed to Bellevue for examination."

---

15. Petitioner's contentions are set forth in an amended petition submitted by petitioner's counsel on July 23, 1963. Petitioner has had several counsel representing her in this proceeding. This court, on May 15, 1962, appointed Anthony F. Marra, Esq., % the Legal Aid Society, New York, as counsel to petitioner, and subsequently petitioner wrote the court that she had retained private counsel. Present counsel was substituted for appointed counsel. During the period that she was represented by appointed counsel and private counsel, and even prior to that period, she addressed communications to the court. The court has perused the myriad applications and communications submitted by petitioner and has undertaken to consider the arguments raised by petitioner in her own behalf, together with those raised by her counsel.

Id. The New York Supreme Court, in reviewing the magistrate's action, stated that the ultimate evidentiary question in a case involving a commitment for observation pursuant to § 870 is whether the doubt of the magistrate as to the defendant's mental capacity to understand the proceedings is so totally devoid of evidentiary support as to render his commitment unconstitutional under the Due Process clause of the Fourteenth Amendment of the Constitution of the United States. Id. at 548. The court concluded that this standard of evidentiary support had not been satisfied and that the magistrate's action could not be supported by any fact "in or dehors the record" other than Weinstein's prior violations. Id. at 548. The commitment was based solely and entirely on the magistrate's suppositions as to the mental condition of a callous landlord. Surely, it appears obvious that this was not enough. People ex rel. Schildhaus v. Warden of City Prison, supra.

■ But to contend, as does petitioner's counsel, that the record before the magistrate in petitioner's case both "in and dehors the record" was totally devoid of evidentiary support is to ignore compelling facts. First, the magistrate had an opportunity to observe the petitioner and to hear her statements that she was receiving treatments for "holes in her bone structure," statements which standing by themselves might not be considered unusual. But of equal importance with the magistrate's observation of the defendant is the fact that the Magistrate's Court file contained a letter from the physician in-charge at the Women's House of Detention that petitioner attempted suicide, appeared to be living in a world of her own, and needed mental observation for her own safety. Even if the magistrate had not had before him matters dehors the record, i. e., petitioner's prior commitment at Harlem Valley State Hospital, and the circumstances of her vengeful assault upon one whom she mistook for the judge who had dismissed her damage suit, the record before the magistrate, nevertheless, provided him with adequate evidentiary support for ordering her commitment pursuant to § 870 of the Criminal Code. See People ex rel. Schildhaus v. Warden of City Prison, supra.

■ Petitioner's contention that Magistrate Nicoll had no authority to commit petitioner to Kings County Hospital but had jurisdiction to commit her only to Bellevue is totally without merit. Sec. 870 specifically mentions both hospitals as places where the examination of a defendant may take place.

■ There is also no merit to petitioner's claim concerning the alleged denial of Due Process in the proceedings culminating in the final commitment order of the Kings County Supreme Court. An examination of the stenographic transcript and the record as a whole, indicates that petitioner was provided with repeated opportunities to present rebuttal psychiatric testimony and each of the procedural steps prescribed by § 872 was followed.

■ Petitioner's counsel seeks to make moment of the fact that petitioner was not present at every stage of the proceeding. The judge's exercise of his discretion, apparently out of concern for petitioner's welfare in excluding her from the room during a portion of the hearing, was not in violation of her right pursuant to State law and did not vitiate the proceedings. Petitioner's counsel would have this Court believe that the petitioner was deprived of her right to call witnesses in her own behalf, subpoena witnesses, conduct cross-examinations, merely because she did not exercise those rights, although ample opportunity was afforded her to do so. Cf. Sporza v. German Savings Bank, 192 N.Y. 8, 84 N.E. 406; In re Coates, 9 N.Y.2d 242, 213 N.Y.S.2d 74, 173 N.E. 2d 797 (1961); People ex rel. Klesitz v. Mills, 179 Misc. 58, 37 N.Y.S.2d 185 (Sup.Ct. 1942).

■ Equally without merit is petitioner's claim that her right to have her certification reviewed by a jury was frustrated by the alleged refusal of her

custodians at Creedmoor to send out her request for a review of her certification by a jury. Mental Hygiene Law, § 76, supra at note 5. It should be noted that the Fourteenth Amendment's Due Process clause does not impose a constitutional obligation upon the states to provide trial by jury in civil cases in general and in cases involving the issue of insanity in particular. Cf. Payle v. Duffy, 334 U.S. 431, 438–439, 68 S.Ct. 1131, 92 L.Ed. 1494 (1948); Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937); Nobles v. State of Georgia, 168 U.S. 398, 18 S.Ct. 87, 42 L.Ed. 515 (1897). The writ extends only to the vindication of asserted federal constitutional rights and does not provide a remedy to correct erroneous determinations of State law. But discriminatory denials of State created rights can raise a federal question cognizable by the federal habeas corpus remedy. Since New York grants to insane persons the constitutional right, implemented by statute, to have their mental condition reviewed and redetermined by a jury, Application of Coates, 8 A.D.2d 444, 188 N.Y.S.2d 400 (4th Dept. 1959), aff'd 9 N.Y.2d 242, 213 N.Y.S.2d 74, 173 N.E.2d 794 (1961); Sporza v. German Savings Bank, supra, an allegation that her Creedmoor custodians, State officers, have acted in a discriminatory manner in refusing to grant petitioner access to the review procedures raises a federal constitutional question that is cognizable under the writ—an alleged denial of equal protection of the laws. Cf. Dowd v. United States ex rel. Cook, 340 U.S. 206, 208, 71 S.Ct. 262, 95 L.Ed. 215 (1950); Ex Parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1940).

▆▆▆ But even if the court accepts petitioner's version of the facts concerning the discriminatory conduct of the state officials, an analysis of her equal protection claim demonstrates that the facts are devoid of any operative significance. Petitioner's state-created right to a jury trial pursuant to § 76 of the Mental Hygiene Law could not have accrued, in any event, until there had

been "the final order of a judge or justice certifying [her]." N.Y. Mental Hygiene Law § 74. The order of Kings County Supreme Court certifying her to Creedmoor was, by its own terms, not to be deemed final until the Director of Creedmoor filed a certificate within 60 days of the entry of the court order certifying that petitioner was mentally ill and in further need of medical treatment. Cf. In re Becker, 198 Misc. 219, 97 N.Y.S.2d 517 (Sup.Ct.1950). This certificate was filed on August 12, 1957— within the prescribed 60 day period— and the order became final on that day. Since petitioner's state-created right to have her certification reviewed by a jury did not accrue until August 12, 1957, petitioner's application of July 13, 1957—assuming that one was drawn— was premature. Thus, even if the court accepts arguendo petitioner's charge that her custodians refused to mail out her jury trial claim on July 13, 1957, this alleged obstruction and inaction on the part of her custodians was not responsible for the deprivation of this right. Moreover, petitioner has not alleged that she or her counsel, who on July 24, withdrew an application dated July 18, 1957, to have her certification reviewed by a jury, attempted to claim her right to a jury trial within the period of time that her right to a review and redetermination remained extant, i. e., 30 days after the entry of the final order.

Petitioner's fourth and last contention, pertaining to the unconstitutionality of that portion of § 872 that authorized her summary transfer from Creedmoor to Matteawan raises constitutional questions of considerably more substance than were presented by petitioner's other contentions. But after weighing and examining the significant and disturbing issues raised by this contention, the court is constrained to conclude that it cannot, on the record before it, be sustained.

▆▆▆ In undertaking the determination of a claim of unconstitutional State legislation the court must accord recognition to a significant canon of con-

stitutional adjudication. That canon concerns the presumption of constitutionality which attaches to all State legislative enactments. In implementation of this principle is the complementary canon that a statute is to be construed so as to avoid serious doubts as to its constitutionality. See Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962); Goldblatt v. Town of Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed. 2d 130 (1962); International Ass'n of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Justification for application of this principle in reviewing state legislation is said to be bottomed on the rationale that State legislatures, charged with the regulation of matters of State and local concern, should not be inhibited in devising legislative solutions except in situations where the legislative solution offends the Equal Protection clause's prohibition against "invidious discrimination."

■ Yet, still another principle of constitutional adjudication is important here: that is that petitioner's claim that § 872 is unconstitutional must be measured in light of the application of the statute to her and not in light of the possible application of the statute to others not now before the court.

■ An analysis of petitioner's contentions leads to the conclusion that she was deprived neither of due process nor of equal protection by the failure of the Commissioner of Mental Hygiene, or his delegate,[16] to provide her with notice and

hearing of her transfer. Petitioner's counsel has contended that her insanity commitment terminated the pending criminal proceeding and that, consequently, she was to be treated as a person committed under civil process and therefore she was not subject to a summary transfer. But this contention is based on a misapprehension as to petitioner's status. Once this misapprehension is dispelled and petitioner's actual status is comprehended clearly, it is evident that petitioner's rights were not violated in this regard.

Although petitioner's condition at the time of her arraignment precluded the state from proceeding further with the indictment, her commitment did, however, arise out of a pending criminal charge. Her commitment under civil process was as a defendant who was charged with a felony for which she was subsequently indicted. N.Y.Code of Criminal Procedure, § 872. The indictment for felonious assault returned on July 16, 1957, was lodged with the director of the institution where she is committed. See People v. Delfs, 31 Misc.2d 655, 220 N.Y.S.2d 535 (Dist.Ct. Nassau, 1st Dist. 1961). And since she was indicted within a reasonable time after the crime was committed the indictment is not subject to dismissal for want of prosecution. See N.Y.Code of Criminal Procedure, § 667. Thus, petitioner will remain confined by the Department of Correction pursuant to the order of commitment until she recovers her sanity. At that time she will be confronted with criminal proceedings under the outstanding indictment. Assuredly, petitioner is

16. Counsel's argument to the effect that her transfer was invalid because the transfer order was not "signed by the Commissioner of Mental Hygiene" is based on an incorrect reading of the statute. The statute permits a transfer if it is "approved by the heads of such departments," meaning the Departments of Correction and Mental Hygiene. The official correspondence between the respective departments, although it was carried on by an Assistant Secretary with a Deputy Commissioner, indicates that the heads of the departments had passed upon the issue of her transfer and had approved it. The Deputy Commissioner of Correction and the Assistant Secretary in the Department of Mental Hygiene were acting pursuant to the authority of their superiors. Public officers are presumed to do their duty unless the contrary appears. There is no showing here that the signature on the transfer order was made by the Commissioner's delegate without his approval. The statute, § 872, does not call for the signature of the Commissioner himself.

not, in a technical sense, a "prisoner" who has been convicted, sentenced and incarcerated pursuant to the criminal process. But her confinement under a civil commitment arising out of a criminal charge is sufficiently close to the status of a sentenced and incarcerated prisoner so as to render the cases dealing with administrative transfers of prisoners to be pertinent and applicable herein by analogy. As to sentenced prisoners, the New York courts have held that the question of the place of confinement is not an open question once a valid commitment has been made. People ex rel. Brown v. Johnston, 9 N.Y.2d 482, 215 N.Y.S.2d 44, 174 N.E.2d 725 (1961); People ex rel. Sacconanno v. Shaw, 4 A.D.2d 817, 164 N.Y.S.2d 750 (3rd Dept. 1957); People ex rel. Russo v. Shaw, 271 App. Div. 768, 64 N.Y.S.2d 517 (3rd Dept. 1946). The New York Court of Appeals has said: "The place where a prisoner sentenced to imprisonment * * * may under the statute be determined by an administrative officer without notice or hearing, and such determination does not violate any constitutional right of the prisoner." People ex rel. Morriale v. Branham, 291 N.Y. 312, 318, 52 N.E.2d 881, 883 (1943), quoted in People ex rel. Sacconanno v. Shaw, supra, 164 N.Y.S.2d at 752.

Petitioner's claim of constitutional deprivation concerns the need for a hearing resulting from a claimed reduction of her rights as a result of her transfer to Matteawan. Petitioner urges that Creedmoor is a civil institution under the jurisdiction of the Department of Mental Hygiene while Matteawan is a penal institution—a "prison"—where she claims she is forced to suffer under even more onerous strictures than were imposed upon her during her previous confinement at Creedmoor. The purported severity of the security and disciplinary restrictions at Matteawan made it mandatory under the due process clause, she urges, to give her notice and hearing of the impending diminution of her rights via the transfer route.

Matteawan State Hospital is a hospital for the criminally insane but it is not a prison, as petitioner contends. The State does admit, however, the greater security measures are taken at Matteawan so "as to prevent the possibility of escape, injury to other patients, to prevent riot and injury to the residents of the community in which the hospital is located. * * *" See United States ex rel. Carroll v. McNeill, 294 F.2d 117, 121 (2d Cir. 1961), vacated as moot, 369 U.S. 149, 82 S.Ct. 685, 7 L.Ed.2d 782 (1962). But the fact that greater security measures are, in fact, imposed at Matteawan does not require this court to impose upon the State the obligation to grant a hearing to a mentally ill criminal defendant concerning the propriety of the decision to transfer her summarily to a maximum security institution. People ex rel. Sacconanno v. Shaw, supra.

It is evident that petitioner suffered no "diminution" of her rights as a result of her transfer to Matteawan. The Kings County Court that heard the petition for civil certification had the absolute discretion under § 872 to commit petitioner, as a defendant charged with a felony, either to Matteawan or to a hospital under the jurisdiction of the Department of Mental Hygiene. In fact, a recent study of New York State commitment procedures indicates that Matteawan is the place of confinement in the first instance for an insane criminal defendant *"charged with homicide, armed robbery, or other serious felony."* Report and Recommendations on Admission to Mental Hospitals under New York Law: Mental Health and Due Process 230 (Ass'n Bar of the City of New York 1962). It should be recalled that the commitment order of the Kings County Court was first inscribed with Matteawan as the place of confinement and petitioner was originally headed there when Creedmoor was substituted for Matteawan. Since petitioner could have been originally committed to Matteawan her transfer to Matteawan subsequently pursuant to § 872 was an exercise of administrative discretion by a

delegate of the Commissioner of Mental Hygiene and the Commissioner of Correction pursuant to the law. Petitioner acquired no vested rights to remain in confinement at Creedmoor merely because she was originally committed there rather than to Matteawan.

■ At any rate, even were there occasion to interfere with an abuse of discretion in an administrative transfer there appears to be no abuse of discretion in this case wherein the State determined that the interests of the public as well as petitioner would be best served by transferring petitioner—an insane prisoner charged with a crime of violence —to a mental hospital for the criminally insane. The court finds that that portion of § 872 that authorizes the transfer, without a hearing, of a committed criminal defendant to any institution of the Department of Correction or the Department of Mental Hygiene is not violative of the Due Process clause of the Fourteenth Amendment as it applies to petitioner.

■ Nor is the Equal Protection clause of the Fourteenth Amendment violated by the provision of § 872 permitting the administrative transfer of committed defendants. Petitioner's Equal Protection attack is bottomed on the holding of the Second Circuit Court of Appeals in United States ex rel. Carroll v. McNeill, supra, in which the court sustained a constitutional attack on § 412 of the N.Y. Correction Law. Section 412 provides, *inter alia*, that a person who has been previously convicted and sentenced to·a term in a correctional institution and who is thereafter committed to a mental hospital may be transferred to Matteawan upon an *ex parte* determination by the Commissioner of Mental Hygiene that he exhibits criminal tendencies. The manner in which § 412 arose in the Carroll case was as follows: Carroll was convicted in 1934 in New York State of robbery, second degree, and served his sentence to its termination on March 17, 1938. Fifteen years after his conviction, on January 17, 1949, an order of certification was issued pursuant to § 74 of the New York Mental Hygiene Law certifying him to Pilgrim State Hospital, a hospital for the care and treatment of the mentally ill under the jurisdiction of the State Department of Mental Hygiene. Carroll escaped from Pilgrim on December 22, 1949. On January 4, 1950, an order was issued prior to Carroll's apprehension, by the Department of Mental Hygiene authorizing the transfer of Carroll to Matteawan pursuant to § 412. Carroll was subsequently apprehended and thereupon transferred to Matteawan. Had it not been for Carroll's 1934 conviction for robbery, the only way in which he could have been transferred to Matteawan in 1950 would have been pursuant to § 85 of the Mental Hygiene Law. Section 85 provides for detailed judicial proceedings and requires that an order transferring a mentally ill patient to Matteawan be based on the judicial determination that the mentally ill patient is dangerous and the safety of the institutional environment requires his transfer there. Section 85 applies only to those mental patients whose commitments do not arise out of a criminal charge and who have never been convicted and sentenced to serve a term in a correctional institution. Thus Carroll's summary transfer to Matteawan was accomplished without the benefit of the § 85 judicial procedure. The Court of Appeals for the Second Circuit held § 412 of the Correction Law violated the Equal Protection clause since it arbitrarily discriminated against those patients who had fully served prior sentences for crimes and had been subsequently admitted by civil process to a state mental hospital. The Court found that unless § 412 could be read to require a grant of a hearing to Carroll and those similarly situated, it was unconstitutional. But see People ex rel. Aronson v. McNeil, 19 A.D. 2d 731, 242 N.Y.S.2d 427 (2d Dept. 1963), cert. denied, 84 S.Ct. 1883 (1964); People ex rel. Brown v. McNeill, 35 Misc. 2d 53, 230 N.Y.S.2d 826 (1962).

Petitioner argues on the basis of Carroll that she has been invidiously discriminated against since she was not af-

forded a transfer hearing while mental patients who are not, or have not been, criminal defendants are afforded a hearing pursuant to § 85 of the Mental Hygiene Law. The State has suggested that the Carroll case may no longer be binding on this court since Carroll died while the case was pending before the Supreme Court and the judgment of the Court of Appeals was vacated and the case remanded to the District Court with directions to dismiss the cause as moot. See 369 U.S. 149, 82 S.Ct. 685, 7 L.Ed.2d 782 (1962). Although such a vacated judgment "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance," United States v. Munsingwear, Inc., 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950), the opinion, nevertheless, still must be given *stare decisis* effect by this court "since the force of the reasoning remains." Comment, Disposition of Moot Cases by the United States Supreme Court, 22 U.Chi.L.Rev. 77, 93 (1955); Granville-Smith v. Granville-Smith, 214 F.2d 820 (3rd Cir. 1954).

Carroll's vitality as precedent does not aid petitioner in advancing her claim. Carroll is distinguishable from the situation presented by the instant facts and does not control the disposition of petitioner's contentions regarding her summary transfer. Due to petitioner's status as an insane criminal defendant who was under indictment, petitioner was not afforded a hearing on her transfer because the New York State Legislature chose to treat her differently, in terms of transfer, than so-called § 85 mental patients. This statutory classification encompassing her by New York State is not invidious or discriminatory. "Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary." Walters v. City of St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660 (1954). "The Constitution * * * precludes irrational [legislative] discrimination as between persons or groups of persons * *. But the Constitution does not require situations 'which are different in fact or opinion to be treated in law as though they were the same.'" Goesaert v. Cleary, 335 U.S. 464, 466, 69 S.Ct. 198, 199–200, 93 L.Ed. 163 (1948), quoting Tigner v. State of Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124 (1943). The Supreme Court has held that "the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevent to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." See McGowan v. State of Maryland, supra, 366 U.S. at 425–426, 81 S.Ct. at 1105; Kotch v. Board of River Port Pilot Comm'rs, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947). New York State could well consider that a person under a criminal charge, and in particular a charge of a crime of violence, need not be given the opportunity to rebut an administrative determination that he or she requires transfer to a security institution. Under the instant facts, this court holds that New York's decision to treat the problem of transferring an insane criminal defendant who has committed a crime of violence differently from the transfer of a non-criminal insane inmate is not arbitrary or capricious. This classification, having some reasonable basis, does not offend the Equal Protection clause merely because it is not made with mathematical nicety. That portion of § 872 providing for an administrative transfer of a committed criminal defendant does not, as applied

to petitioner, violate the Equal Protection clause.

Accordingly, there being no merit to any of petitioner's contentions, the petition for the writ of habeas corpus is dismissed.

So ordered.